JAMES D. SPARROW, Administrator, etc., Respondent, v. STATE EXCHANGE BANK et al., Appellants.

Kansas City Court of Appeals, November 9, 1903.

BANKS AND BANKING: Administration: Deposit: Trust Funds. Where the customer of a bank runs his account in his name with the letters, "Adm'r" added, the bank may apply such deposit to the payment of his over-due note, although the money in such deposit may belong to an estate of which the customer is administrator, unless the bank has knowledge that the money does so belong. Cases considered.

Appeal from Macon Circuit Court.—*Hon. Nat. M. Shelton*, Judge.

REVERSED.

*Web. M. Rubey* and *Thomas N. Dysart* for appellant.

(1)   It is a well-settled principle that where a depositor in a bank is indebted to the bank by bill, note or other indebtedness the bank has the right to apply so much of the funds of the depositor as may be necessary to satisfy the same.   Morse on Banks and Banking, sec. 559; Bolles on Banks and Dep., sec. 403; Park Bank v. Herman Schneidermeyer, 62 Mo. App. 183; Bank v. Hughes, 17 Wend. 94; Marsh v. Bank, 34 Barb. 228. (2)   Without notice then of the fiduciary character of the depositor the bank would have a right to apply the moneys deposited by him to the payment of any debt due the bank from the depositor.   Clark v. First National Bank, 57 Mo. App. 287.   (3)   The word ''Admr.'' added to Magee's name on his checks and the books of the bank is not in itself notice to any one that Magee held the funds as such administrator.   Eyerman v. Bank, 13 Mo. App. 289, affirmed by 84 Mo. 408; Lindsay v. Brooks, 82 Mo. App. 301; Mayer v. Bank, 86 Mo. App. 108; Clark v. Bank, 57 Mo. App. 277; Morse on B. & B., sec. 604.   (4)   On the contrary, the presumption as between the parties is in favor of the personal ownership of the funds by the depositor, and if nothing else appears, the bank must be guided in all of its transactions by these presumptions.   Eyerman v. Bank, 13 Mo. App. 289; Lindsay v. Brooks, 82 Mo. App. 306.

*R. S. Matthews & Son* and *B. E. Guthrie* for respondent.

(1)   The agreed statement of facts show that Magee had no account in the State Exchange Bank at all when he sold the Emdee real estate and deposited the proceeds of sale thereof in the bank.   His former account had been closed, and with the Emdee money, he opened a new account in the name of ''Wm. J. Magee,

Administrator.'' (2) The bank fails to show how much Magee owed the bank on the sixteenth day of May, 1902, when it appropriated the $152.18 that was in the bank to Magee's credit as administrator. It did not show whether Magee owed it $1 or $100,000 or whether the bank was amply secured or not on the individual indebtedness of Magee to the bank or anything about Magee's indebtedness to the bank. (3) Magee did not check the $152.18 to the bank, but it was in the bank in the name of "Wm. J. Magee, Administrator," when Magee became insane. The bank can not be permitted to hold this money and appropriate it to the individual indebtedness of Magee to the bank. A fraud has been committed upon the Emdee estate. No fraud was committed by Magee in putting the money in the bank in the name of "Wm. J. Magee, Administrator." He did the thing the law required him to do. (4) Magee did not check to the bank $152.18. If he had checked it himself to pay a private debt the moment he checked the same the fraud would have been completed by himself, and the bank would not have been responsible for the fraud, unless it in some way personally knew that Magee was committing a fraud for its benefit. Bank v. Ins. Co., 104 U. S. 54; Bank v. Gillaspy, 137 U. S. 411; Trust Co. v. Boone, 66 Am. St. Rep. 167; s. c., 102 Ga. 202; Paul v. Draper, 73 Mo. App. 566; Ihl v. Bank, 26 Mo. App. 129. (5) The bank mingled and commingled the money deposited by Wm. J. Magee collected for the Murphy heirs on its own motion, without the consent or approval of Magee, with the money in the bank belonging to the Emdee estate, and whatever loss occurred to any one, if any, but the mingling and commingling of the funds the bank is responsible therefor. (6) The bank had lost nothing by the deposit by "Magee as administrator" of money of the Emdee estate, and equity will not permit the bank to profit by the fraud perpetrated upon the Emdee estate by the bank itself

in taking the money from the administrator's account. As to the general doctrine of this State in following trust funds in the hands of an insolvent. Harrison v. Smith, 83 Mo. 210; Stoller v. Coates, 88 Mo. 520; Pundmann v. Schoenich, 144 Mo. 149; Bank v. Brightwell, 148 Mo. 365; Bircher v. Walthea, 163 Mo. 461.

SMITH, P. J.—This is a suit in equity which was brought against the defendant, State Exchange Bank, the object and purpose of which was to secure an accounting between it—the bank—and the estate of John Emdee, the plaintiff's intestate, and to recover one hundred and fifty-two dollars, etc. The cause was submitted to the court on an agreed statement of facts which was as follows:

1. "That Wm. J. Magee, defendant, was on the thirtieth day of April, 1902, the lawful administrator of the estate of John Emdee, deceased; and also curator of the Murphy heirs, whose present curator, the successor of said Magee, has been made a party defendant, and permitted to file her claim to the funds in controversy in this suit.

2. "That said Magee has since the 16th day of May, 1902, been adjudged of unsound mind and the defendant John W. Gross appointed his curator. And by reason of Magee's insanity the plaintiff herein, James D. Sparrow, had been appointed and is now lawfully acting as administrator *de bonis non* with will annexed of the estate of said John Emdee, and that Lena Murphy, a party defendant in this case, has been appointed and is now lawfully acting curator of the aforesaid Murphy heirs.

3. "That said Magee as administrator of the estate of John Emdee, prior to April 30, 1902, sold some real estate belonging to said estate and on the thirtieth day of April, 1902, deposited $1,350 of the proceeds in the State Exchange Bank of Macon, one of the defend-

ants in this suit, in the name of Wm. J. Magee, administrator.

4. "That on the tenth day of May, 1902, said Magee as curator of the said Murphy heirs collected $489 belonging to said heirs, and deposited same in said bank in the name of 'W. J. Magee,' but which sum was by the bank credited on its books to the account of 'W. J. Magee, Admr.,' there being no account in said bank in name of 'W. J. Magee.'

5. "That said Magee on the first day of May, 1902, commenced drawing upon said account of 'W. J. Magee, Admr.' signing the checks 'W. J. Magee, Admr.' and by May 14, 1902, had drawn all of said account but $152.18.

6. "That on the sixteenth day of May, 1902, the defendant, the State Exchange Bank of Macon, drew from said account said balance of $152.18 and gave credit therefor upon an overdue note held by said bank against W. J. Magee.

7. "That said Magee has done business in said bank from 1894 to 1902 but had but one account and that was kept in the name of 'W. J. Magee, Administrator.' That to the credit of that account he deposited all money, checks or drafts which he did from time to time deposit, no matter from what source received; and against said account he drew money for any and all purposes, including his private and personal debts, always signing checks, 'W. J. Magee, Admr.'

8. "That the defendant, the State Exchange Bank of Macon, had no actual notice, knowledge or information, either at the time of the aforesaid sums of $1,350 and $489 were deposited, nor at the time it drew and used the $152.18 that the same was other than the funds of W. J. Magee.

9. "It is further admitted that Magee is indebted to the estate of John Emdee in the sum of $1,699.40 as shown by final settlement made in the probate court of Macon county, Missouri, by John W. Gross, curator

of Magee for the Emdee estate, and amount due is unpaid.

10. "It is admitted that the estate of Wm. J. Magee is insolvent.

11. "It is further admitted that Magee as curator is indebted to the estate of Geo. E. Murphy and Hugh A. Murphy as alleged in the sum of $314 as shown by the final settlement made by Jno. W. Gross as curator of Wm. J. Magee in the probate court for the Murphy heirs."

The finding and decree was for plaintiff and defendant appealed.

It is a well-settled principle that where a depositor in a bank is indebted to the bank by bill, note or other indebtedness, the bank has the right to apply so much of the funds of the depositor to the payment of his matured indebtedness as may be necessary to discharge the same. Morse on Banking, sec. 559; Bolles on Banking and Dep., sec. 403. And so it has been expressly decided by the appellate courts of this State that where a discount has been made by a bank and the note has matured so as to create an indebtedness from the depositor to the bank, all funds of the depositor which the bank has at the date of the maturity of the discounted note, or afterwards acquires in the course of business with him, may be applied to the discharge of his indebtedness. Park Bank v. Schneidermeyer, 62 Mo. App. 179; Muench v. Bank, 11 Mo. App. 144; Ehlermann v. Bank, 14 Mo. App. 591; Bank v. Carson, 32 Mo. 191.

Applying to the conceded facts as set forth in the 6th paragraph of said statement of facts agreed the rule first adverted to and it is clear that the bank was authorized to apply any money belonging to Magee on deposit with it to the discharge of his overdue note to it. But it is contended that Magee had no funds on deposit with it and that the fund applied by it was that of Emdee's estate, or else that of the Murphys'. The

vital question in the case is whether the deposit of the $1,350 belonging to Emdee's estate to the credit of "W. J. Magee, Admr." was notice to the bank that the fund was held by him in a fiduciary capacity. It is conceded that the defendant bank had no actual notice or knowledge at the time of the deposit or at the time of the application of the $152 of the fund then on deposit to the discharge of its overdue note, that such funds belonged to any person other than Magee himself. Eyerman v. Bank, 13 Mo. App. 289, was a case where a draft payable to the order of "Herman Rechtien, County School Treasurer," was by him indorsed and delivered to defendant bank and by it collected and applied to the discharge of a past due indebtedness of said Rechtien to it. This fund was claimed by the plaintiffs who had been subrogated to the rights of the county in the deposit. In the course of the opinion it was said by Judge Lewis, who delivered the opinion of the court:

"The fact that a man is county treasurer furnishes no presumption that money deposited by him in a bank is the property of the county. The bank, in receiving the deposit, becomes debtor to him as an individual. This relation between the parties is not changed by the addition of 'county treasurer' to his name in the bank account books, or in the checks drawn by him. It has been frequently held that such additions impart no notice that the fund is held in a fiduciary capacity, and that they have no legal significance beyond a description of the person. Thus, 'Herman Rechtien, County Treasurer,' may be a form intended only to show that the person is not some other having the same name who is not county treasurer. Every legal presumption, as between the parties, is in favor of the personal ownership of the fund by the depositor; and, if nothing more appears, the bank must be guided, in all its transactions, by these presumptions. The principle is the same that was recognized in Powell v. Morrison, 35 Mo. 244,

though with a different application.   There, a promissory note given in the purchase of lands sold in partition was made payable to 'the order of James Castello, Sheriff of St. Louis county.'   The payee sold the note before maturity, and one of the partitioners sued the transferee for his share of the partition proceeds contained in the note.   It was held that the words 'sheriff of St. Louis county' imparted no notice to the indorsee, of the trust attached, but were merely descriptive of the payee, and the plaintiff could not recover.   A like conclusion was reached in Thornton v. Rankin, 19 Mo. 193, where, upon a sale of real estate belonging to certain minors, a note was made payable to their guardian, by the description 'Isaac J. Cooper, Guardian, etc.,' and by him transferred to an indorsee without other notice of the facts.   So, in Fletcher v. Schaumburg, 41 Mo. 501, it was held that a distributee in partition could not set up her distributive interest against her note given at the sale, and indorsed by the sheriff, with his official addition, to an innocent purchaser.   It must be observed that, in each of these cases, the decision was founded squarely on the propositions that the *descriptio personae* imparted no notice of the existing trust, and that the indorsees had, in fact, no notice thereof from any other source.   They were entitled, therefore, to be treated as if no such trust existed."   And this opinion was approved and adopted by the Supreme Court without qualification.   Eyermann v. Bank, 84 Mo. 408.

Mayer v. Bank, 86 Mo. App. 108, was where a note payable to "S. C. Palmer, Curator," was indorsed and delivered by him to the bank as collateral security to a note given by him for a loan.   Palmer was removed from the curatorship and Mayer, his successor, brought replevin to recover of the bank possession of the note so held by it.   The bank had no knowledge that the note was trust property unless notice could be imputed to it from the fact that it was indorsed as just stated.   In

disposing of the bank's appeal we held through Mr. Justice GILL, speaking for the court, ·· that, "notwithstanding there is some confusion in the decisions, we think the overwhelming trend of authority favors the proposition that the mere addition of the words 'curator,' and the like, to the name of the payee and indorser does not carry notice that negotiable paper so indorsed is trust property and not that of the individual payee and indorser. Such words when so appearing are treated as mere *descriptio personae.*" Citing, 2 Morse B. & B. (3 Ed.), sec. 604; Thornton v. Rankin, 19 Mo. 193; Powell v. Morrison, 35 Mo. 244; Nickerson v. Gilliam, 29 Mo. 456; Fletcher v. Schaumburg, 41 Mo. 501; Eyerman v. Bank, 84 Mo. 408.·

Mayer v. Bank, 86 Mo. App. 422, was where the bank officers were told to credit the proceeds of a check payable to bearer to the credit of "S. C. Palmer, Curator," but the credit was entered to his individual credit. The bank officers had knowledge that the money was held by him as curator or in a fiduciary capacity. He subsequently drew his individual check against the fund so deposited in favor of the bank to discharge his past due indebtedness to it. In that case we held that the bank acquired no right to the fund. And the reason of the holding was expressed in this wise: that it is a well-settled rule of law that a bank can not use a deposit to pay the individual debt of the depositor due to it *where it has knowledge that the deposit is held by the depositor in a fiduciary capacity and does not belong to him.* Citing, Johnson v. Bank, 56 Mo. App. 257; Clark v. Bank, 57 Mo. App. 277; Payne v. Bank, 43 Mo. App. 377.

And so in Clark v. Bank, supra, it was said that, it is a rule deducible from many authorities that a bank can not use a deposit to pay the individual debt of the depositor due where it *has knowledge that the deposit is held by the depositor in a fiduciary capacity and does not belong to him personally.* It was further said.

in the same case that the defendant contends that the word "receiver" which was added to the name of the payee in the notes was no notice to the defendant bank that the defendant held them in a fiduciary capacity. It is true that this *addendum* alone would be insufficient to impart such notice, but it seems to us that this in connection with the information which the receiver and Mr. Burney gave the president was ample' to apprize defendant of the fact that said notes and the *proceeds thereof* were held by the receiver in his fiduciary capacity. And an explicit recognition of this rule is contained in both the opinion and the dissent thereto which was delivered in Lindsay v. Brooks, 82 Mo. App. 301. We do not think there is anything in Gregg v. Bank, 80 Mo. 256, inconsistent with the ruling in Eyermann v. Bank, 84 Mo. supra, but if so, the latter overthrows the former. Nor do we think that the latter case has been trenched upon by the ruling made in Evangelical Synod, etc. v. Schoeneich, 143 Mo. 652.

It must be confessed that the rule declared by the Supreme Court of the United States in Bank v. Ins. Co., 104 U. S. 54, and the cases in which it has been followed by that court, can not be reconciled with that declared in the Missouri cases already alluded to. If the question here had not been authoritatively ruled by our own Supreme Court we should be inclined to adopt that declared by the Supreme Court of the United States, since the reasoning in those cases by that great court in favor of the rule therein announced, it seems, are of the most cogent and persuasive nature.

It would therefore seem that as the defendant had no knowledge that the fund was held by Magee in a fiduciary capacity and that the deposit though to the credit of "Wm. J. Magee, Admr." must, under the circumstances stated in the facts agreed, be regarded as belonging to him in his individual capacity and that as creating the relation of debtor and creditor between him and the bank and therefore it had the right to apply the

said fund to the extinguishment of an overdue indebtedness of his to it. And the same reasoning applies, as we think, with much greater force to the claim interposed to the fund by the Murphy heirs.

The deposit made by Magee of the fund belonging to them to the credit of the same account affords no basis for a claim by them. If he directed the fund to be placed to his individual credit, or, if he gave no directions whatever in respect to what account it should be credited, he afterwards made no objection to the action of the bank in crediting it to the only account he therein had. He drew this money out of the account to the credit of which it had been placed. He knew that unless this fund had been placed to the credit of the "Wm. J. Magee, Admr." account, that his balance on that account was not equal to that of his several checks against it. He tacitly approved the action of the bank in placing the Murphy deposit to the credit of the only account he had in the bank. The bank had no knowledge that the fund belonged to the Murphy heirs. It had a right to presume it belonged to him individually.

In view of the adjudicated cases in this State to which we have referred we can perceive no ground upon which the latter can recover the fund so greatly in controversy in this case.

The decree was for the wrong party and must be reversed. All concur.