KUNIANSKY, for use, etc., *v.* MOBLEY, superintendent, *et al.*

No. 6677.    FEBRUARY 16, 1929.

854

855

*Hewlett & Dennis* and *Little, Powell, Smith & Goldstein,* for plaintiff.

*Orville A. Park,* and *C. N. Davie,* for defendant.

BECK, P. J. (After stating the foregoing facts.) The order of the payments of the debts of an insolvent bank is fixed by the 19th section of the 7th article of the original banking act of 1919. Acts 1919, p. 135. By the act approved August 25, 1925, this original 19th section was stricken and a new 19th section was substituted. Acts 1925, p. 129. Subsection 4 of the new section 19 reads as follows: "Judgments and debts secured by lien to the extent of the value of such lien, not void or voidable under the provisions of this act or the law of Georgia; judgments and liens to have the force, rank and dignity prescribed by law." The petition in this

case is based upon the contention that Kuniansky's debt is one secured by lien, and falls within the class of debts referred to in subsection 4; that is, a debt secured by lien. The court below held that it did not. Whether it is a debt secured by lien depends upon the construction of section 34 of article 19 of the banking act of 1919, as follows: "When any bank, or any officer, clerk, or agent thereof, receives by mail, express, or otherwise, a check, bill of exchange, order to remit, note, or draft for collection, with request that remittance be made therefor, the charging of such item to the account of the drawer, acceptor, indorser, or maker thereof, or collecting any such item from any bank or other party, and failing to remit therefor, or the nonpayment of a check sent in payment therefor, shall create a lien in favor of the owner of such item on the assets of such bank making the collection, and such lien shall rank with other liens, according to date, and shall attach from the date of the charge, entry or collection of any such funds." The following stipulation was made between counsel in the trial of the case: "If the plaintiff was entitled to prove a claim with rank in the fourth class of the order of the payment of claims under the 19th section of the banking act of 1919, relating to the order of paying debts of insolvent banks, then the plaintiff was entitled to the interlocutory injunction prayed for; and if the plaintiff was not entitled to prove a claim of such character, then the plaintiff was not entitled to the interlocutory injunction prayed for."

Moreover, upon examination of the petition and answer it appears that there is no conflict of evidence. The petition makes certain recitals of fact, all of which in substance are admitted by the answer; and the answer recites certain additional facts as to which no issue was taken. So the recitals of fact in the petition and in the answer are presented as constituting substantially an agreed statement of facts. The controlling issue is upon a question of law; and upon a consideration of that question we have reached a conclusion different from that reached by the court below, and are of the opinion that the Kuniansky debt falls within that class of debts declared to be a lien by subsection 4 of section 19 of the banking act of 1925, amending the act of 1919. Section 34 of the act of 1919, under the construction of which we have reached this conclusion, so far as it is applicable to the issue presented by this record, is as follows: "When any bank. . . .receives . .

a check, bill of exchange, order to remit, note, or draft for collection, . . collecting any such item from any bank or other party, and failing to remit therefor, or the non-payment of a check sent in payment therefor, shall create a lien in favor of the owner of such item on the assets of such bank," etc. Considering the undisputed facts, the Colonial Trust Company in effect had made a collection of the drafts upon the Mortgage Bond Company of New York; that collection being effected as follows, according to the recitals in the petition:

"The Colonial Trust Company had a regular banking account with the Fulton National Bank of Atlanta, and deposited the said drafts to the credit of it, the Colonial Trust Company, with the Fulton National Bank of Atlanta, and the last-named bank, upon the deposit, gave credit in said bank account to the Colonial Trust Company, the said credit being an open credit to its account, subject to its check or checks, and without restrictions of any kind, and said credit has never been canceled or rescinded. . . Within a few days thereafter the Colonial Trust Company was taken over by the superintendent of banks. At the time it was thus taken over it was indebted to the Fulton National Bank of Atlanta in an amount largely in excess of the balance standing to the credit of the Colonial Trust Company in its bank account or checking account with the Fulton National Bank of Atlanta; and the balance in this checking account was thereupon applied by the Fulton National Bank of Atlanta as a credit on the indebtedness to it of the said Colonial Trust Company, thereby reducing to that extent the amount of the indebtedness of the said Colonial Trust Company. The indebtedness of the Colonial Trust Company to the Fulton National Bank of Atlanta herein referred to was in the form of certain notes to it, and the checking account herein referred to is the same account into which the Colonial Trust Company had deposited the drafts referred to as Exhibits A and B, for which it had received credit as aforesaid. 4. In the said notes of the Colonial Trust Company to the Fulton National Bank of Atlanta, on which the balance in its checking account was applied, as herein alleged, there appears the following agreement on behalf of the Colonial Trust Company, to wit: 'We do hereby give the holder hereof a lien for this note upon all property left with said holder, and upon any balance of deposit account of the undersigned with said holder, with authority to at any time charge any or all of

said demands against the deposit account on the books of the holder hereof.' "

Our conclusion that there had been a collection of the drafts is not affected by the fact that these drafts were not paid by the Mortgage Bond Company of New York, and that the Fulton National Bank had reserved the right to charge back to the account of the Colonial Trust Company any items which were not paid, and that the drafts had been received by the bank with this understanding; for the amount of the drafts had been actually placed to the credit of the Colonial Trust Company, and, as the Fulton National Bank had a right to do under the terms of the agreement between it and the Colonial Trust Company, the bank had applied the balance of the Trust Company's checking account as a credit on the indebtedness to it of the Trust Company, thereby reducing to that extent the amount of indebtedness of the Trust Company to the bank. We say this amounted to a collection by the bank. And while Kuniansky had a right to the proceeds of the drafts when collected (or if they had been collected), his right to such proceeds was in the nature of a secret equity of which the Fulton National Bank had no notice, nor were the circumstances of the case such as to put it on inquiry as to the rights of Kuniansky. The principles underlying the conclusions which we have reached have been announced in decisions by various courts in this country. See Kimmel v. Bean, 68 Kan. 598 (75 Pac. 1118, 64 L. R. A. 785, 104 Am. St. R. 415); Sparrow v. State Exchange Bank, 103 Mo. App. 338 (77 S. W. 168); Hatch v. Fourth Nat. Bank, 147 N. Y. 184 (41 N. E. 403); Shuman v. Citizens' State Bank, 27 N. D. 599 (147 N. W. 388, L. R. A. 1915A, 728); McStay Supply Co. v. Cook, 35 Nev. 284 (132 Pac. 545); Smith v. Crawford County Bank, 99 Iowa, 282 (61 N. W. 378, 68 N. W. 690); Globe Savings Bank v. National Bank, 64 Neb. 413 (89 N. W. 1030); First National Bank v. City National Bank, 102 Mo. 357 (76 S. W. 489); First National Bank of Sharon v. Valley State Bank, 60 Kan. 621 (57 Pac. 510). Numerous other cases might be cited. A contrary view to that announced in this decision, and argued with much force in the brief of opposing counsel, is also supported by authorities cited in the brief. We are of the opinion that the court erred in refusing an injunction as prayed.

*Judgment reversed. All the Justices concur, except Gilbert, J., disqualified.*