ADDISON E. CADY, APPELLANT, V. SOUTH OMAHA
NATIONAL BANK, APPELLEE.

FILED SEPTEMBER 16, 1896.   No. 6173.

Trust Funds: BANK DEPOSITS: ACCOUNTING: RIGHTS OF COMMISSION
MERCHANTS. The reasoning and conclusions of the original opin-
ion in this case, as reported in 46 Neb., 756, considered and ap-
proved on this rehearing.

REHEARING of case reported in 46 Neb., 756.

See opinion and former report for statement of the case.

*John C. Watson* and *Frank T. Ransom*, for appellant.

*Charles Offutt*, for appellee:

The alleged defect in the answer was waived by appel-
lant.   He offered and introduced in the trial court the
evidence which sustained the defense.   He made no ob-
jection in the trial court to the evidence there introduced
by appellee in support of the defense.   He made no ob-
jection in the trial court that the answer was insufficient,
and made none in this court. (*Omaha Belt R. Co. v. McDer-
mott*, 25 Neb., 714; *Elsanger v. Grovijohn*, 29 Neb., 139;
*Chicago, K. & N. R. Co. v. Wiebe*, 25 Neb., 542; *Chamberlain
v. Brown*, 25 Neb., 434; *Oberfelder v. Kavanaugh*, 29 Neb.,
430; *Wasatch Mining Co. v. Crescent Mining Co.*, 148 U. S.,
293; *Tyng v. Commercial Warehouse Co.*, 58 N. Y., 308;
*Humphries v. Spofford*, 14 Neb., 488; *Homan v. Steele*, 18
Neb., 652; *Donovan v. Fowler*, 17 Neb., 247; *Hassett v.
Curtis*, 20 Neb., 162; *Despatch Line v. Glenny*, 41 O. St.,
166.)

Conceding that the proceeds of the shipment to Fitch
were trust funds, the bank cannot be held to account by
the *cestui que trust* unless it received and applied such
funds with knowledge of the appellant's claim thereto.
(2 Pomeroy, Equity Jurisprudence [ed. 1886], sec. 1048;

*Stephens v. Board of Education,* 79 N. Y., 183; *Burnett v. Gustafson,* 54 Ia., 88.)

The opinion in 46 Neb., 756, is in conflict with a former decision of this court. (*Hurlburt v. Palmer,* 39 Neb., 158.)

RYAN, C.

An opinion was heretofore filed in this case, which was reported in 46 Neb., 756, *et seq.* A motion for a rehearing having been sustained and additional arguments heard, the criticisms of the former opinion will now be considered. It is insisted that the principle upon which the former opinion in this case proceeded had been repudiated in *Hurlburt v. Palmer,* 39 Neb., 158. This principle was by counsel stated in that case as follows:. "Every dollar which Virgin obtained from Palmer, Richman & Co. which was not invested in stock and which was by him diverted to his personal use was fraudulently obtained and fraudulently used, so far, at least, as Virgin was concerned. It is elementary that a person obtaining property by fraud acquires no title to it, but it is held by him, and by all persons claiming under him with notice, in trust for the original owner. So long as the property can be identified in its original or in a substituted form, it belongs to the original owner if he elects to claim it; and if it passes into the hands of an innocent purchaser for value the title of the defrauded owner, at his option, at once attaches to the avails so long as their identity is preserved, no matter how many transmutations of form the property has passed through. So long as the trust property can be traced and followed into other property into which it had been converted, that remains subject to the trust. The product or substitute has the nature of the original imparted to it." This statement of a general principle, as such, is no doubt correct. In it there is no attempt to determine what might be the limitations upon the rights of the defrauded owner as against one who, deceived by appearances made possible by the conduct of said owner, in good faith had acquired

title to the misappropriated fund. In like manner, in the opinion already filed in this case there was no attempt to state limitations or qualifications of the general rule that the plaintiff is entitled to recover from defendant his money, which it wrongfully applied upon the indebtedness of Fitch to it; indeed, this fact was carefully indicated in the opinion criticised, by the following language: "It may, for the purpose of the present inquiry, be conceded that payment by the bank of the money in controversy upon Fitch's checks, in good faith, relying upon his apparent title thereto, without notice of the appellant's rights in the premises, would be a complete justification,—in short, that appellant, having clothed Fitch with the apparent ownership of said fund, is now estopped as against the bank to question his authority to check it out." In the case of *Hurlburt v. Palmer* the principle quoted from the brief of the counsel was not repudiated, but was held inapplicable. to the facts presented, which were that the money sought to be recovered from the bank had been loaned by plaintiff to Mr. Virgin to enable him to purchase stock for shipment to plaintiff as his commission merchant, and had been used by Virgin in paying his already existing indebtedness to the bank. This was a loan, and the commission firm, while it extended credit upon the faith of the expectation that the stock to be purchased would be shipped to it for sale in South Omaha, the transaction was none the less a loan, consequently there was no room for the inference of a trust relationship or the application of the doctrine invoked in this case.

There was filed in this court on March 20, 1896, an amended answer, in which there were averments that the appellee received from Fitch the money claimed by appellant without knowledge that the credit given Fitch on the faith of the weight tickets was based upon sales of stock of appellant, and never knew that appellant claimed any interest in this deposit until long after appellee had paid it out on checks of Fitch. This unau-

thorized amended answer, by which for the first time there was an attempt to plead matters of estoppel, cannot be considered as a pleading. If such an issue could be for the first time tendered in this court, it would logically follow that additional evidence must be admitted to sustain this issue, and, practically, this court might be required to try the case as though it had never been tried in the district court. The statement above made of the purport of this amended answer is a fair epitome of one of the contentions made upon the rehearing. As was indicated by the former opinion, the narrowness of the issues tried in the district court does not admit of the consideration of this alleged matter of estoppel. Counsel, however, has been so earnest in his argument that this court has committed a grave mistake, to the serious prejudice of his client, in this particular case and all others in its line of business, that we shall consider these contentions beyond the field of investigation covered by the former opinion. On page 760 of that opinion there was given a summary of the account of Mr. Fitch with the appellee. The first item was of the date September 26, a balance of $35.36. By reference to the condition of this account on September 25 we find that the balance was $976.44, in red ink, which, the evidence shows, meant that Fitch was overdrawn to that amount; that is, owed it to the bank on his account with it. As stated in the former opinion, there were drawn out on September 26 two items of $10 in the aggregate, which increased the overdraft to $986.44. The deposit on the same day, which included the proceeds of the sale of the stock consigned by appellant, was $1,021.80. This left a credit in favor of Fitch of $35.36, the first item in the summary heretofore given. As this summary extends to and includes October 2, it will not be restated. The balance on the day last named was $16.41. On the day following Fitch drew out $10. On October 4 he deposited $1,127.16 and drew out $17.55, leaving a balance in his favor of $1,116.02. On October 5 Fitch deposited

$1,996.47 and drew out $3,100.91, leaving still to his credit $11.58. On October 6 Fitch deposited $567.82 and drew out $395.40, leaving a balance to his credit of $184. On the 8th day of October Fitch drew out $94.70, leaving a balance of $89.30 to his credit. On October 12 he drew out $89, which left to his credit thirty cents, which he drew out on the 27th, and with this his account closed. It might have been more artistic to have stated these transactions in the form of an account, but this would not have rendered it so clear as does the above method, that, after the appellee had credited Fitch with the proceeds of the sales of appellant's consignment, Fitch was never permitted to draw any part of these proceeds. The money paid for the stock of appellant still remains in the bank, and the doctrine of estoppel could not be invoked, even if the pleadings permitted of our consideration of that question.

It was shown by the former opinion, in the light of adjudicated cases, that the doctrine of a trust was properly applicable to the facts of this case. Upon further investigation we find that the same principle has been applied in *First Nat. Bank of Central City v. Hummel*, 14 Colo., 259, and *Hutchinson v. President and Directors of Manhattan Co.*, 29 N. Y. Supp., 1103. The case of *Clemmer v. Drovers Nat. Bank*, 41 N. E. Rep. [Ill.], 728, decided by the supreme court of Illinois June 5, 1895, is strikingly like the one at bar in all respects, even to the details of the weight tickets forming the basis of the credit which the bank gave the firm of brokers and afterward applied on an existing indebtedness. The decree of the circuit court, which gave the same relief as is sought in this case, was affirmed. The case just cited, as well as that of *Union Stock Yards Bank v. Gillespie*, 137 U. S., 411, cited in the former opinion, sustain the position taken in the former opinion, and as no case at variance has been cited by counsel or found by ourselves, we cannot believe, as insisted by counsel, that we have introduced an innovation which will most disastrously affect the banking business

of this state.   The judgment of the district court is re-
versed, with the same direction as was given in the for-
mer opinion.

REVERSED.

IRVINE, C., not sitting.

RAGAN, C., dissenting.