THE FIRST NATIONAL BANK OF SHARON, PENNSYLVANIA, V. THE VALLEY STATE BANK, OF HUTCHINSON, KANSAS, *et al.* No. 11250.

1. TRUST FUND—*Principal and Agent—Bank Deposit.* When an agent rightfully in possession of his principal's money deposits it in a bank of which he is president to his own credit, and as a part of his general-deposit account, tells the cashier the name of the person to whom it belongs, and instructs him to remit it to the owner, but the remittance is not made, and the agent in a short time checks against the general balance of the account, inclusive of the deposit in question, reducing it far below the amount of such deposit, the bank has the right to presume that the agent knows the remittance has not been made and has revoked the or-

der to make it, and that the checking out of the deposit by the agent is within the authorized terms of his agency; and in such case the bank will not be charged with notice of a trust in favor of the owner of the money to the extent of the deposit made by the agent.

2. ——— *Application of Agent's Deposit to Debt Due the Bank.* Nor does the trust in favor of the owner of the money arise, if subsequently, and at a time when the agent's general deposit is below the amount of his principal's money deposited by him, he discovers that the remittance has not been made, and therefore directs that the balance to his credit be applied upon his debt due to his principal, if he is also at the same time indebted to the bank and it chooses to assert its lien upon his funds for its protection; but the bank may refuse to do as directed, and instead thereof may apply the balance of his account to the payment of a debt which the agent in his individual liability owes to it.

Error from Reno district court; MATTHEW P. SIMPSON, judge. Opinion filed June 10, 1899. Affirmed.

*W. M. Whitelaw*, and *Frank S. Whitelaw*, for plaintiff in error.

*Prigg & Williams*, for defendants in error.

The opinion of the court was delivered by

DOSTER, C. J.: This was an action brought by the plaintiff in error to recover money as a trust fund belonging to it which had been deposited in a bank by another in his name. October 25, 1895, one C. B. Evans executed to one W. E. Hutchinson a promissory note for $4500, and secured it by a mortgage on 250 head of cattle. Hutchinson immediately transferred this note and mortgage to one M. B. Abell, of Kansas City, Mo., who in turn immediately transferred them to plaintiff in error. Immediately after, or possibly before this last transfer, Hutchinson, as the agent of Abell, shipped the cattle to Kansas City and sold them for $5540. This sum was sent through the medium of a bank in Kansas City to one

of the defendants in error, the Valley State Bank, and placed to the credit of Hutchinson in a general-deposit account kept by him. Hutchinson at that time was president of this bank. November 1, 1895, Hutchinson informed one Wilfley, the cashier of the Valley State Bank, that the deposit to his credit of the $5540 was the proceeds of the sale of the cattle mortgaged by Evans to him to secure the note of $4500, and which he had transferred to Abell, and that he desired his account debited with $4500 and the amount remitted to Abell in payment of the note. Wilfley replied that he would do as desired, and Hutchinson supposed that he had done so; however, he did not do so, which fact Hutchinson discovered about January 3, 1896. Intermediate the giving of the direction to the cashier and the discovery that it had not been complied with, Hutchinson made additional deposits of his own funds to the credit of his general account, and drew checks upon it. Often the credit side of his account, including the before-mentioned deposit of $5540, was less than the $4500 he had directed to be remitted, running at one time as low as about $500, so that Hutchinson must have known that the remittance was not made to Abell, or else must have known that he was largely overdrawing his account.

When Hutchinson discovered that the Abell note had not been paid, he had to his credit at the bank $3800. He borrowed $700 more from the bank, giving his note therefor, and directed that the $3800 to his credit and the amount borrowed be remitted to Abell in payment of the $4500 note, of which he still supposed Abell to be the owner. The assistant cashier, one Welch, objected to the use of these funds for the payment of the Abell note, because Hutchinson

was and for several months had been indebted to the bank in the amount of another note for $4500, also given to him by the before-mentioned Evans, which note Hutchinson had sold and indorsed, and which upon its maturity the bank had paid for him as indorser, and which it still held against him as an obligation due to it. According to the desire of Welch, the money was not remitted in payment of the Abell note, but was used to discharge Hutchinson's indebtedness due to the bank on the other note; that is, Hutchinson's deposit account of $3800, increased by the $700 loan, was debited with the amount of his note. It is not clear whether Hutchinson finally assented to this arrangement. As to all other facts above stated there is no substantial dispute. The Valley State Bank went out of business and turned its assets over to the Bank of Hutchinson, which bank became insolvent and is in the hands of John M. Kinkel as receiver. Without going into a detailed explanation, it is sufficient to say that, under the circumstances shown in evidence, if the Valley State Bank was liable to the plaintiff in error, the First National Bank of Sharon, Pennsylvania, the Bank of Hutchinson, and Kinkel, as its receiver, are likewise liable. The district court held in favor of the defendants, and the plaintiff prosecutes error to this court.

Counsel for plaintiff in error vehemently assert that the deposit of $5540, the proceeds of the sale of the mortgaged cattle, was charged with a trust to the extent of the note of $4500, which had been transferred to Abell and to the plaintiff in error, and that the Valley State Bank was charged with notice of such trust when informed by Hutchinson of the source from which the deposit of cattle money was derived, and was directed to remit the necessary amount in pay-

ment of the note.  It is without doubt true that an agent cannot make the funds in his hands belonging to his principal his own funds by depositing them to his own credit in a bank.  He cannot, as to the bank, make them his own funds if the bank has notice of the real ownership, provided the bank still has them, or their representative, on hand, so that they can be followed and reclaimed by the real owner.  The difficulty, however, in such a case as this, is to determine the extent of the agent's authority over the fund, after he has deposited it to his credit, when no notice of ownership other than what the agent himself imparts is given to the bank.  Does the agent depositing his principal's fund in his own name part, as against the bank, with all dominion or authority over so much of his general account as is represented by the deposit in question, by merely stating to the bank that it belongs to another, and directing it to be paid to him?  Can the agent by so doing impose a trust upon the bank, and require the bank to set apart, as it were, so much of the general fund as it is informed belongs to another, so that not even the agent and depositor, any more than a stranger, can exercise control over it? We think not.  Upon this precise question to which the contention of the parties becomes reduced we have not been favored by counsel on either side with any authorities, or with any close reasoning, and with the amount of other labor necessarily devolving upon us we are unable ourselves to brief cases, as it were, or make much original research among the books.  To the extent that we have been able to investigate, we have found no cases involving the precise question.

The fact that Hutchinson was in possession of the fund derived from the sale of the mortgaged cattle was sufficient evidence to the bank that he had the

right, as agent, to control the fund — was sufficient evidence that the principal had put him in the possession of such fund. As agent he could make payments to the principal in any recognized business way he chose, and, so far as concerned the bank, could make it at any time and in such instalment payments as he chose. If the bank had learned from any other source than Hutchinson himself that the deposit was the proceeds of the sale of cattle mortgaged to Abell, or to the plaintiff in error, could it have raised a question with Hutchinson as to his control of the fund thus derived and thus deposited by him? Could it have refused to honor Hutchinson's checks drawn against it or against the general balance inclusive of it, upon the ground that it was not Hutchinson's money but some other person's in whose interest it must be kept, and held the deposit? We think not. It would have been bound to assume that Hutchinson's rightful possession of the fund justified him in dealing with it as he did, and in checking upon it as he chose. It would be bound to assume that an agreement existed between Hutchinson and the owner of the fund which justified the former in keeping it in his own name and checking upon it as he did. It would be bound to assume that Hutchinson was dealing with the fund within the terms of an authorized agency. If this be true, it would make the case nowise different if the information as to the ownership of the fund and the source from which derived came from Hutchinson instead of some one else or in some other way. If this be true, it could make no difference that Hutchinson gave the cashier, Wilfley, a direction to remit the entire amount to the owner. Until this was done, the fund, so far as the bank and Hutchinson were concerned, did not pass beyond the

control of the latter.  Such an order to the cashier was not irrevocable.  If revoked the bank could assume that Hutchinson had changed his mind as to the time and manner of payment; that he was still acting within the terms of his agency or had received new directions from his principal.  As stated before, no authorities directly in point have been cited to us, nor have we, in the cursory examination made, found any directly in point.  A case which substantially involves the principle, though differing somewhat from it in point of fact, is *Munnerlyn v. Augusta Bank*, 88 Ga. 333 ; *s. c.* 30 Am. St. Rep. 159, 14 S. E. 554.  In that case it was ruled :

'' When a trustee deposits money in a bank to his credit as agent, the bank would be discharged by paying it back to the individual who made the deposit, and, in the absence of knowledge or notice to the contrary, has the right to assume that he will appropriate the money to its proper uses and trusts.''

There can be no substantial difference between a case where an agent makes a deposit of money as '' agent,'' thus informing the bank that the fund is not in reality his, and one in which the agent makes the deposit in his own name but at the same time informs the bank that he is only the agent of another for it.  In both cases the bank would have the right to assume that the agent in dealing with the fund was acting within the terms of his agency.  Especially was this true in the case of the Valley State Bank. It had the right to assume that on account of Hutchinson's presidency of it and his presumptive familiarity with its business, he knew the remittance had not been made, and knowing it had not been made had concluded to do otherwise with the fund in question.

The cases of *National Bank v. Insurance Co.*, 104

U. S. 54, and *Van Allen v. American National Bank*, 52 N. Y. 1, cited by counsel for plaintiff in error, are not cases where the agent had checked out the amount of the deposit as Hutchinson had done, but they were cases in which the fund still existed in the agent's name, and in both instances the question reduced to the ultimate was whether the fact of its being the fund of another than the agent could be shown by the equitable owner. This is not our question.

The conclusion being that a trust did not attach to Hutchinson's general deposit in favor of Abell or other assignee of the mortgage, it follows that none subsequently attached by the new direction given on the 3d of January to remit the balance of $3800 of deposit to Abell in payment on the mortgage note. That was nothing more than a direction by Hutchinson to use his money to pay his debt. At that time the bank was demanding from Hutchinson repayment of the money it had advanced to him with which to discharge the other note. On any funds shown by the books to belong to Hutchinson and concerning which it had no other knowledge, it had a banker's lien which it could enforce as against him, and as against any of his general creditors. (1 Morse, Bank., § 324, *et seq.*) It did enforce that lien by debiting Hutchinson's account with a proportionate amount of the indebtedness due to it; besides, as before stated, it is not clear that Hutchinson did not assent to the action of the bank. The court specially found upon that subject as follows :

"The evidence does not show by a preponderance thereof that there was an agreement upon the part of the Valley State Bank, by any of its officers, with W. E. Hutchinson that the $700 loaned to Hutchinson mentioned in the preceding finding and the balance of $3800 credit on Hutchinson's general account with

the bank should be used by the bank or its officers in payment of the note in suit, and no part of said sums was, at any time, set apart for the purpose of paying the note in suit.''

The general finding having been against the plaintiff in error, we are bound to assume that as finally made it was against it upon that specific point. If Hutchinson borrowed the $700 for the purpose of applying it upon the Abell note, and the bank knew this intention when it made the loan to him, it would be bound to permit its application to the intended purpose; it would be held to have waived its lien upon the fund thus loaned, and to have agreed to Hutchinson's use of it in the discharge of his other debt—in fact, it would be held to have made the loan to him for that purpose. The burden of proof as to the making of this agreement, or the occurrence of facts from which the agreement could be implied, rested on the plaintiff. That burden, as the court finds, was not discharged by a preponderance of the evidence. In the absence of an assent, express or implied, upon the part of the bank to allow the use of the money loaned for a specific purpose, it would, when passed to Hutchinson's credit, become covered, as his other funds were, by the lien of the bank.

The judgment of the court below will be affirmed.

JOHNSTON, J., and SMITH, J., concurring.

DOSTER, C. J. (dissenting): I very much doubt the soundness of the principal conclusions reached in the foregoing opinion. In the lack of directly supporting authority, I dissent. I think that in some instances the doctrine of the impressibility of funds in the hands of banks and other custodians with trusts in favor of equitable claimants has been carried to an

extreme length in this state, and took occasion so to remark in *Insurance Co. v. Caldwell*, 59 Kan. 160, 52 Pac. 440, but the decision in this case seems to be subject to the opposite criticism. I think that the information given to the cashier, Wilfley, by Hutchinson charged the bank with knowledge of the trust character of the deposit made.