66   655
e68   599
68   600

66   655
f72   121
72   122

I. F. MARTIN v. THE KANSAS NATIONAL BANK, AND R. T. BEAN AND F. O. DAVIDSON, *Partners as the Wichita Live-stock Commission Company.*

No. 13,074.   (72 Pac. 218.)

SYLLABUS BY THE COURT.

BANKS AND BANKING—*Deposit in Agent's Name.* A bank cannot be held to account to the owner of a fund where such fund has been deposited by an agent in his own name and paid out upon his check without knowledge by the bank of any want of power on the part of the agent.

Error from Sedgwick district court; D. M. DALE, judge.   Opinion filed April 11, 1903.   Affirmed.

*Smyth & Helm,* for plaintiff in error.

*Houston & Brooks,* for defendants in error.

The opinion of the court was delivered by

CUNNINGHAM, J. : By this action plaintiff in error, as plaintiff below, sought to recover from the defendants the proceeds of the sale of a car-load of hogs sent by him to the Wichita Live-stock Commission Company, to be sold by it on commission.   This car-load of hogs was shipped by the plaintiff from Enid, Okla., consigned to himself at Wichita, Kan., with instructions to the commission company to sell the same and remit the proceeds.   Being unable to find a suitable market at

Wichita, the commission company reshipped to Kansas City and notified the plaintiff of this action. The hogs were there sold, and in due course a check for the proceeds, payable to the Wichita Live-stock Commission Company, was sent by the Kansas City factor to that company. This check was deposited with the defendant bank on the 24th day of April, and on the same day the commission company sent to the plaintiff its check on the defendant bank for the amount going to him. This check was presented to the defendant bank some time in the afternoon of the 26th of April, and its payment refused. The live-stock company had notified the bank before this refusal that by reason of a serious and unexpected loss it was unable longer to continue in business.

It appears that the commission company had been doing business for something over two years; that it was originally organized with the son of the president of the bank as one of its members; that he retained some interest in the company up to the time of its failure, but had long prior to that time ceased to have any active interest in, or knowledge of, its business; that it was organized without capital for the purpose of handling live stock on the Wichita and other markets for commission; that it frequently advanced money to shippers upon their bills of lading prior to the time when, by the sales of such shipments, it had realized the funds; that it was the understanding at the time of the organization that it should do its banking business through the defendant, and that it had done such business with the defendant. In the course of its business, the commission company would sometimes have quite a large amount to its credit on the books of the bank, and at others its account would be quite largely overdrawn; that when

so overdrawn it was notified by the officers of the bank that such overdraft must be made good, or payment of its checks would cease ; that in all respects its deposits and withdrawals of money by check were in accordance with the usual rules of business governing such transactions ; that for several days prior to its failure it had carried quite a large overdraft, caused by the prepayment of a consignment of cattle from one of its customers ; that on the 26th of April, the date of the failure, it had ascertained that through the criminal acts of this customer it had been defrauded out of the proceeds of such consignment, to its loss of about $4000, and that this loss was the immediate cause of its suspension of business ; that on the 24th day of April, when the Kansas City check covering the proceeds of the sale of plaintiff's hogs was deposited with the defendant bank, the commission company had overdrawn its account there $3387. The business of the 24th, 25th and 26th increased this overdraft by $22, so that no part of the proceeds of the sale of plaintiff's hogs went to decrease this overdraft. While in a general way the defendant bank knew of the character of the business being done by the commission company, the record fails to show that it knew that there had been any transaction between the plaintiff and the commission company, or that the fund evidenced by the Kansas City check belonged to the plaintiff. A demurrer was sustained to the evidence of the plaintiff and judgment rendered on behalf of defendant bank for its costs.

Something is sought to be made out of the fact that the son of the president of the bank was interested in the commission company. No foundation, however, is found in the evidence for any claim of fraud or wrong-doing on the part of the bank in this respect.

The principal claim made by the plaintiff for recovery is that the fund evidenced by the check received by the commission company from the sale of his hogs in Kansas City was a trust fund, and as such was held by the bank and must be so accounted for. We find no warrant in law, under the evidence, for sustaining this claim. It is true that, had the fund been in the hands of the bank at the time of the commencement of the action for its recovery, or had the bank applied the same to the liquidation of a debt due to it from the commission company with knowledge of the fact that the fund so applied did not belong to the commission company, but to its customers, then it would have been held to account to the rightful owner of such fund. It has even been held that the bank would be held so to account had it applied the fund to the payment of a debt of the agent, even though it supposed that such fund belonged to the agent himself. However, the facts of this case do not warrant the application of this rule in any sense, either liberal or restricted. The ordinary course of business had been pursued between the bank and the commission company for two years. Deposits were frequently made, and checks as frequently drawn and paid, the bank being all the time unaware, so far as the evidence shows, of the particular source whence any of the funds came. This course of business was pursued up to the date of the company's failure, and from the time of the deposit of the fund in question up to the time of the failure, a larger amount was paid out on checks than was received in deposits, so that it cannot be said that the bank in any way proffited by the receipt of the plaintiff's money. The plaintiff, by placing his property in the hands of the commission company for sale, authorized that com-

pany to receive the price thereof and to handle the same in the due and ordinary course of business, which included the right to deposit in bank and withdraw by check.   Any other rule than this must of necessity paralyze business of this character, for, if a bank is to be held liable for all trust money deposited and checked out by the trustee in the ordinary course of business, of course no bank would or could safely engage in the ordinary banking business.   The rule is tersely stated in Morse on Banks and Banking, second edition, page 300 :

''Where money is deposited by a person in his own name, and with no notice, express or implied, that any other person has any title, right or interest therein, the bank is justified in paying the same to him and upon his checks, until it has notice that some other person claims the money under a superior title, and intends to enforce that claim adversely to the title of the depositor.''

Abundant authority might be cited in support of this rule, or one even more liberal to the banks than this.   We content ourselves by citing from our own reports *Bank v. Bank*, 60 Kan. 621, 57 Pac. 510.

We think the plaintiff failed to show any right to recover, hence affirm the judgment of the court below.

All the Justices concurring.