S. W. KIMMEL v. R. T. BEAN *et al.*

**No. 13,156.**  ( 75 Pac. 1118.)

SYLLABUS BY THE COURT.

BANKS AND BANKING—*Principal and Agent—Deposit Applied on Overdraft.* A bank which receives from an agent for deposit in his own name the money of his principal, without notice of the agency, is protected in applying it to a past due debt of the depositor to the same extent as in paying it out upon his checks, whenever such application is authorized by the agent, either expressly or by legal implication; and such authority ordinarily arises from the making of a deposit without other directions, where the debt to which it is applied is an overdraft.

Error from Sedgwick district court; D. M. DALE, judge. Opinion filed March 12, 1904. Affirmed.

*Adams & Adams*, for plaintiff in error.

*Houston & Brooks*, for defendants in error.

The opinion of the court was delivered by

MASON, J.: On April 20, 1900, S. W. Kimmel, of Garber, Okla., shipped to a Wichita commission firm, known as the Wichita Live-stock Commission Company, a car-load of hogs, with directions to sell, and to send him a draft for the net proceeds. The hogs were sold to Jacob Dold & Son on April 25, and the commission company at once mailed to Kimmel its personal check on the Kansas National Bank, of Wichita, where they had had an account for several years, for $1016.16, that being the amount for which the sale was made, less the commission and expenses. Dold & Son paid for the hogs on April 26 with a check made payable to the order of the commission company, drawn upon another Wichita bank. The company at once indorsed the check and deposited it in

their bank, receiving credit upon their deposit account, and it was paid on the same day. Kimmel deposited the check sent him by the commission company with his local banker, and it was forwarded for collection through the ordinary banking channels, reaching Wichita on May 1, when it was presented to the bank on which it was drawn, which refused payment. Kimmel then sued the bank for the amount of the check, alleging that the deposit of the proceeds of the sale of the hogs was made without his authority and in violation of his instructions, and that the bank knew all the circumstances connected with the transaction. The bank answered, denying knowledge of the relations of plaintiff and the commission company, and alleging that when the Dold check was deposited the company's account was overdrawn more than that amount; that the overdraft had been permitted upon an agreement that it should forthwith be made good by deposits, and that the check, when deposited, was applied to such overdraft without notice of plaintiff's claim. Plaintiff replied with a general denial. Upon the trial, the court sustained a demurrer to plaintiff's evidence, and rendered judgment accordingly, which plaintiff now seeks to reverse.

The evidence was mainly directed to the question of the bank's knowledge of the commission company's business. Substantially the same facts were shown in this regard as in *Martin v. Bank*, 66 Kan. 655, 72 Pac. 218, which grew out of a similar claim against the same bank made by another shipper. Here, as in that case, an effort was made to show such intimate relations between the bank and the commission company as to justify charging the former with actual or constructive notice of plaintiff's interest in the check deposited by the latter. In fact, however, little more

was shown than that the bank knew that the company was engaged in the commission business and that their account was sometimes overdrawn. The evidence on this point, being stated in some detail in the Martin case, will not be further reviewed. Following the conclusion reached in that case, we hold that the bank must be deemed not to have had notice of the relation of the commission company to the shipper.

Plaintiff claims that the record does not show that the account of the commission company was overdrawn to the amount of the Dold check at the time it was deposited. The evidence in this regard is not as full as might be desired, but we think that, upon the consideration of the entire testimony, it sufficiently appears that such was the fact. Indeed, it is perhaps to be inferred that the overdraft was allowed to be created in virtue of a statement by the commission company that they had funds ready to deposit against it, having reference to this very check. The question incidentally suggested in *Martin v. Bank*, supra, is therefore fairly presented : Can a bank be held to account to the owner of a fund which has been deposited by an agent in his own name and applied upon the agent's overdraft, the bank having no knowledge of the agency ? The strongest case cited in support of the contention of plaintiff in error for an affirmative answer to this question is that of *Cady v. South Omaha Nat. Bank*, 46 Neb. 756, 65 N. W. 906 ; id., 49 Neb. 125, 68 N. W. 358. The third paragraph of the syllabus reads :

"F., a commission merchant, deposited in bank money realized from the sale of live stock consigned to him by C., his account with the bank being at the time largely overdrawn. *Held*, regardless of the question of notice, that the bank is accountable to C., and

Kimmel v. Bean.

that it cannot apply the money so deposited in satisfaction of F.'s indebtedness.''

Under the evidence in that case, as stated in the opinion, it might well have been said that the bank was chargeable with notice, but no account was taken of this fact as a basis for the conclusion reached. In the opinion a number of cases are cited, one of which, *Davis v. Panhandle Nat. Bank*, 29 S. W. (Tex.) 926, seems to be entirely in point, holding that, where an agent deposits the money of his principal in his own name, the bank cannot hold it for the debt of the agent, although it has no knowledge of the agency, unless it would otherwise lose its claim.   No authorities are cited or arguments presented in support of this conclusion, the opinion merely stating that the court did not see upon what principle the bank should be allowed to retain the money, and that it was perfectly manifest that it had no right to do so.   A brief review of the other cases cited will show that they do not go as far as the Nebraska decision.

In *Pennell v. Deffell*, 4 De G. M. & G. 372, it was held that trust funds deposited by a trustee in his own name together with money of his own could be followed by the beneficiary; but the controversy was between the beneficiary and the executors of the trustee, the bank making no claim.   In *Van Alen v. American National Bank*, 52 N. Y. 1, the bank likewise made no claim to the money in controversy, and it was held that it could be required to pay it to the real owner, although it was deposited in the name of another, who gave the real owner a check for it.   The questions discussed were purely technical.   In *Burtnett v. F. N. Bank of Corunna*, 38 Mich. 630, an agent deposited funds of his principal in his own name.   Some six months later he died, and the bank then attempted to apply

the deposit to a debt of the decedent, the character of which is not shown in the reported decision. It was held that this could not be done, the case turning upon the fact that the agent never authorized the money to be applied to his debt. In *Third National Bank of St. Paul v. Stillwater Gas Co.*, 36 Minn. 75, 30 N. W. 440, it was merely held that money obtained by a bank by fraud could be recovered by the real owner, although it had passed through several hands. In *Peak v. Ellicott, Assignee*, 30 Kan. 156, 1 Pac. 499, 46 Am Rep. 90, the money involved was not paid to the bank as a deposit, but for a specific purpose, and, as this was not performed, it was held that on the insolvency of the bank it should go to the owner and not to the general creditors. In *Baker et al. v. New York Nat'l Ex. Bk.*, 100 N. Y. 31, 2 N. E. 452, 53 Am. Rep. 150, it was held that a bank having notice of the trust character of a fund deposited by a firm in its own name with the addition of the word "agent" could not apply it to the debt of the firm.

In *Whitley v. Foy*, 6 Jones Eq. (N. C.) 34, 78 Am. Dec. 236, the bank had actual notice that money deposited in the name of one person was owned by another; moreover, the controversy was between the real owners and the administrators of the depositor. In *National Bank v. Insurance Co.*, 104 U. S. 54, 26 L. Ed. 693, and *Union Stock Yards Bank v. Gillespie*, 137 id. 411, 11 Sup. Ct. 118, 34 L. Ed. 724, the facts were held to give the banks notice of the trust character of the deposits involved. *First Nat. Bank v. Hummel*, 14 Colo. 259, 23 Pac. 986, 8 L. R. A. 788, 20 Am. St. Rep. 257, cited on rehearing, 49 Neb. 125, 68 N. W. 358, was another controvery between the beneficial owner of a trust fund and the administrators of the trustee. In *Hutchinson v. President etc. of Man-*

.hattan Co., 29 N. Y. Supp. 1103, a check was deposited by an agent for collection only, and it was held that the bank could not hold it for the debt of the agent, because this was contrary to the intention of all the other parties in interest, including the agent. The decision, moreover, was reversed by the court of appeals. ( 150 N. Y. 250, 44 N. E. 775.)   In *Clemmer v. Drovers' Nat. Bank*, 157 Ill. 206, 41 N. E. 728, the bank knew of the trust character of the deposit. These are all the cases cited on this branch of the case by the Nebraska court.

· The same doctrine is announced in 2 Morse on Banks and Banking (4th ed.), section 590, citing this case, that of *Burtnett v. F. N. Bank of Corunna*, 38 Mich. 630, which has already been commented upon, and *Cook v. Tullis*, 18 Wall. 332, 21 L. Ed. 933, which only declares the right of the real owner of property to hold it against the trustees in bankrupty of one to whose care it had been confided.

Plaintiff in error also cites *Farmers' and Merchants' Bank v. Farwell,* 58 Fed. 633, 7 C. C. A. 391.   Expressions are found in the opinion in that case favorable to his contention, but the decision turned largely upon the fact that the money sought to be held by the bank did not reach it by any act of its debtor, or even with his knowledge, but was deposited in his name by his attorney through mistake.

A conclusion different from that of the Nebraska court is reached in *Smith v. Des Moines National Bank,* 107 Iowa, 620, 78 N. W. 238, where the authorities bearing upon the matter are collected and reviewed. The scope of the opinion is indicated by a paragraph of the syllabus, reading as follows :

''A *cestui que trust* cannot recover trust moneys which were deposited in a bank by the trustee in his own

name and which, without notice of their trust character the bank applied to a matured individual note of the trustee, surrendering the note to the latter.''

We think this decision is in accordance with the weight of authority and with the better reason. The facts there presented differ in no material respect from those now under consideration, except that the depositor expressly agreed that the bank might apply the deposit to his debt, and the bank surrendered the note which evidenced it. Where a depositor carries an account with a bank as a part of his usual business, continually drawing checks and making deposits, sometimes having a balance to his credit and sometimes being overdrawn, it seems clear that the mere act of making a deposit is equivalent to an agreement that it shall apply against any overdraft that may exist at the time. Presumptively, that would seem to be the very purpose of the deposit.

''It has long been settled that a banker who has advanced money to another has a general lien on all securities of the latter which are in his hands, for the amount of his general balance, unless such securities were delivered to him under a particular agreement limiting their application.''. (*Wood v. Boylston National Bank*, 129 Mass. 358, 37 Am. Rep. 366.)

''When a depositor opens an account in a bank that very act, in the absence of an agreement to the contrary, authorizes the appropriation of his deposit balance to any matured claims the bank may hold against him, the same as if he then executed an agreement in writing to that effect.'' (*Meyers v. New York County Nat. Bank*, 36 Hun, App. Div. 482, 484, 55 N. Y. Supp. 504.)

But if the general rule were otherwise, the circumstances of this case, already stated, would amount to an authority to the bank from its customer to apply the deposit to the overdraft. And there seems no just

ground for making a distinction for any purpose here involved between the payment of a past-due debt that is evidenced by a note and the payment of one that is a mere matter of book account. No such distinction is made where the question relates to the consideration for the transfer of negotiable paper. (*Draper v. Cowles*, 27 Kan. 484 ; *Mann v. National Bank*, 30 id. 412, 1 Pac. 579.) Indeed, the very principle of protection to the innocent purchaser of commercial paper is invoked by defendants in error. The check deposited in this case was a negotiable instrument. The substantial controversy is as to its ownership. The bank acquired it from one who had the apparent title, without notice of any other claim. The argument that these considerations are sufficient to sustain the defendant's position seems sound. But the business was conducted as a cash transaction. The commission firm might have collected the Dold check themselves and deposited the cash in the bank, and the question presented would not have been materially different. The principle upon which transfers of negotiable instruments in payment of and even as security for existing debts are upheld is the desirability of promoting their currency. (*Birket v. Elward*, ante, p. 295, 74 Pac. 1100.) Surely no greater currency should be given to notes and bills than to actual money.

"The rule has been settled by a long line of cases, that money obtained by fraud or felony cannot be followed by the true owner into the hands of one who has received it *bona fide* and for a valuable consideration in due course of business. . . .

"It is said that the case is to be governed by the doctrine established in this state that an antecedent debt is not such a consideration as will cut off the equities of third parties in respect of negotiable securities obtained by fraud. But no case has been referred to where this doctrine has been applied to

money received in good faith in payment of a debt. It is absolutely necessary for practical business transactions that the payee of money in due course of business shall not be put upon inquiry at his peril as to the title of the payor. Money has no earmark. The purchaser of a chattel or a chose in action may, by inquiry, in most cases, ascertain the right of the person from whom he takes the title. But it is generally impracticable to trace the source from which the possessor of money has derived it. It would introduce great confusion into commercial dealings if the creditor who receives money in payment of a debt is subject to the risk of accounting therefor to a third person who may be able to show that the debtor obtained it from him by felony or fraud. The law wisely, from considerations of public policy and convenience, and to give security and certainty to business transactions, adjudges that the possession of money vests the title in the holder as to third persons dealing with him and receiving it in due course of business and in good faith upon a valid consideration. If the consideration is good as between the parties, it is good as to all the world." ( *Stephens v. Board of Education,* 79 N. Y. 183, 186, 187, 35 Am. Rep. 511.)

"If a trustee or other fiduciary person, in violation of his own duty, uses trust money to pay an antecedent debt of his own to a creditor who has no notice of the breach of trust, or that the money is subject to the trust, in such a manner that the money is received as a general payment, and not as a distinct and separate fund, then the money becomes free from the trust, and cannot be followed by the beneficiary into the hands of the creditor, although, in general, an antecedent debt does not constitute a valuable consideration." ( Pom. Eq. Jur., 2d ed., § 1048.)

In addition to the authorities cited in *Smith v. Des Moines National Bank,* supra, see *Bank v. Bank,* 60 Kan. 621, 57 Pac. 510 ; *G. N. Bank v. State,* 141 N. Y. 379, 36 N. E. 316 ; *Holly v. Missionary Society,* 180 U. S. 284, 21 Sup. Ct. 395, 45 L. Ed. 531, and *Meyers v. New York*

*County Nat. Bank,* supra.   The syllabus in the last-named case reads :

"A bank, having previous authority to apply a customer's deposit to his debt, can appropriate it to the debt, though the deposit was in part money of the depositor's ward, the bank having no knowledge of the fact."

We think that a bank which receives from an agent for deposit in his own name the money of his principal, without notice of the agency, is protected in applying it to a past-due debt of the depositor to the same extent as in paying it out upon his check, whenever such application is authorized by the agent, either expressly or by legal implication, and that such authority ordinarily arises from the making of a deposit upon an overdrawn account when no other directions are given.

The judgment is affirmed.

All the Justices concurring.