# Batson *v.* Alexander City Bank.

## *Assumpsit.*

(Decided December 5, 1912.   60 South. 313.)

1. *Money Had and Received; Wrongfully Obtained; Liability of Third Parties.*—Money obtained by fraud cannot be followed by the owner into the hands of the one receiving it in due course of busi- ness and for a valuable consideration, although such consideration be an antecedent debt.

2. *Same; Mortgagee; Rights to Money Advanced.*—A chattel mort- gagee having rescinded the mortgage contract for fraud had a right to the specific money advanced to the mortgagor while he retained it, and until its identity was lost by its payment to another in good faith for a consideration without notice of the fraud.

3. *Banks and Banking; Deposits; Lien.*—The lien of a bank for any advance or loan made to the depositor arises when the advance

[Batson v. Alexander City Bank.]

is made, entitling the bank to apply the funds of the depositor to the payment of such indebtedness.

4. *Same.*—A bank has a lien on funds deposited in due course of business for any balance of general account due it from the depositor.

5. *Same; Deposits; Right of Bank.*—A bank becomes the owner of money deposited in due course and becomes the debtor of the depositor and has a lien on such deposit for the general balance due it, with the right to appropriate so much of the deposit credit as was sufficient to discharge the depositor's indebtedness to it.

6. *Same; Right of Third Persons.*—The crediting of a depositor's account with the amount deposited was not the payment of a consideration to him by the bank for the deposit and did not preclude one procuring an order thereon from the depositor in satisfaction of a valid claim from asserting such claim, if the bank had not theretofore appropriated the deposit to the payment of the valid claim held by it against the depositor.

7. *Assumpsit; Bank Deposit; Order to Third Person.*—Money received by a chattel mortgagor from the mortgagee upon execution of the mortgage, which mortgage is afterwards rescinded for fraud and which was deposited by the mortgagor in the bank and for which he gave the mortgagee an order upon rescission, belonged in good conscience to the mortgagee and entitled him to recovery in general assumpsit.

8. *Mortgages; Fraud; Rescission; Elements.*—In order to rescind a chattel mortgage for fraud and recover the money advanced on rescission, the mortgagee must have had a right to rely and must have relied on the false representation.

9. *Same; Rescission; Surrender.*—A mortgagor could waive the surrender or cancellation by the mortgagee of the mortgage, upon the latter's rescission of the mortgage for fraud as a condition precedent to rescission, even if surrender and cancellation were required.

10. *Contracts; Fraud; Reliance on Representation.*—One who seeks rescission of a contract for fraudulent representation upon which he has acted is presumed to have relied and acted upon such representations, thus casting the burden of showing the contrary upon the other party.

11. *Evidence; Hearsay and Opinion.*—In an action to recover a sum deposited in bank by a mortgagor and claimed by the mortgagee after rescinding the mortgage, evidence that plaintiff's business dealings with the mortgagor as a county official had been the subject of criticism was objectionable both as hearsay and as opinion evidence.

12. *Same; Past Transactions.*—The evidence examined and it is held that the circumstances sought to be shown were not relevant to put the mortgagee on notice of the non-existence of mules claimed to be owned by the mortgagor and covered by the mortgage.

13. *Same; Sufficiency.*—The material facts essential to a recovery need only be proved to the reasonable satisfaction of a jury or so as to reasonably satisfy them; plaintiff not being required to prove them absolutely, or to satisfy the jury thereof.

14. *Trial; Reception of Evidence.*—It is not error to exclude a question which does not indicate a possibly relevant answer.

15. *Charge of Court; Applicability to Evidence.*—Where the complaint contained counts in trover and in assumpsit and plaintiff was entitled to the general charge on the count in assumpsit, the giving of the general charge upon the complaint generally was misleading, but does not constitute reversible error in the absence of a request for an explanatory charge from the adversary side.

APPEAL from Coosa Circuit Court.

Heard before Hon. S. L. BREWER.

Action by the Alexander City Bank aganst J. P. Batson, doing busness as the Bank of Rockford. From a judgment for plaintiff, defendant appeals. Affirmed.

Plaintiff's case, as presented by count A1 and A2 of the complaint as amended, is as follows: On February 4, 1910, plaintiff made a loan of $1,200 to one Ellis, receiving from him as security a chattel mortgage on six mules, together with other property. Ellis represented that he owned the mules, and the loan was made to him in reliance upon the truth of this statement. Ellis deposited this money with the defendant, doing business as the Bank of Rockford. About February 28, 1910, plaintiff discovered that Ellis did not own the mules, and that his statement of ownership was false, whereupon he went to Ellis, rescinded the loan transaction, and demanded the repayment of the money he had received from plaintiff. Ellis agreed to this, and gave to plaintiff an order in writing, addressed to the defendant, to pay said amount of $1,200 to plaintiff, and also notified defendant that the money belonged to the plaintiff. Plaintiff presented this order to defendant, and demanded of him the $1,200, which the defendant refused to pay. It is alleged that defendant was not a bona fide purchaser for value of said money. Count B is in trover for the conversion of the money, and count C is in general assumpsit for money had and received for the use of the plaintiff.

The defendant pleaded the general issue and five special pleas, which set up substantially the following defenses: (1) That at the time plaintiff presented Ellis' check or order to the defendant, the said Ellis was justly indebted to the defendant in the sum of $652; that the sum of $1,414 was all that Ellis then had on deposit in defendant's bank, and that, after applying the $652 of this amount to Ellis' debt, there did not remain sufficient to pay plaintiff's check or order. (2) In addition to the above facts, that defendant had no knowledge of the fraud imputed to Ellis, nor of the manner in which, or the source from which, he obtained the money, and that the money was deposited with him by Ellis as a general deposit in the usual course of business. (3) That the deposit was received by defendant in the regular course of business, in good faith, and for a valuable consideration, in that defendant gave said Ellis credit therefor. (4) That at the time of said deposit defendant was surety on said Ellis' official bond as treasurer of Coosa county; that Ellis was then in official default to the amount of $3,000, for which he and defendant as bondsman were and continued to be liable, and that the county had a lien on said money deposited with defendant. Defendant's demurrer to the amended count of the complaint was overruled, and plaintiff's demurrers to the special pleas were sustained, after the fifth plea had been stricken from the file on motion of plaintiff.

The assignments of error are based on these several rulings of the court on the pleading, and its action in excluding certain questions propounded to witnesses by the defendant, and also in giving the general affirmative charge for the plaintiff.

S. J. DARBY, for appellant. The person in whose favor a check has been drawn has no rights against the

bank until the check has been accepted or certified.—
Section 5136, Code of 1907. The fact that the counts
seek to vary the legal effect of the transaction by set-
ing out the facts that the money was obtained by false
pretence, while creating a cause of action between plain-
tiff and Ellis, would not authorize a recovery in this
case.—*Loeb v. Flash,* 65 Ala. 527. The title of the sub-
purchaser, or purchaser without notice, prevails over
that of the vendor.—*Leigh v. M. & O. R. R. Co.,* 58 Ala.
165. One in possession of money is certainly presumed
to be its owner.—*Moore v. Robinson,* 62 Ala. 543; *M.
&. M. R. R. Co. v. Belrath,* 67 Ala. 109; *Lehman v. Tal-
lassee Mfg. Co.,* 64 Ala. 567. Plea 5 was good and
should not have been stricken—Section 1491, Code of
1907; *Randolph v. Brown,* 115 Ala. 627. The defendant
had a right to hold sufficient of the money to pay what
was due him.—*Lehman v. Tallassee Mfg. Co., supra;
Lowenstein v. Bressler,* 109 Ala. 426; *Wynn v. Talla-
poosa Bank,* 168 Ala. 469. The bank became the owner
of the money the moment it passed over the counter and
if received without notice of fraud, it became the money
of the bank and the credit given Ellis was a valuable
consideration and hence there was no basis for an ac-
tion of trover.—*Wynn v. Tallapoosa Bank, supra;* Zane
on Banking, section 130. The court should have ad-
mitted the official bond of Ellis with the defendant as
surety thereon, as a surety is a creditor of its principal
from the date of the default.—*Smith v. Pitts,* 167 Ala.
461; *Washington v. Norwood,* 30 South. 405; *Scheussler
v. Dudley,* 80 Ala. 547. Charge 3 should have been
given.—*Nations v. Hawkins,* 11 Ala. 859; *Heflin v.
Flay,* 78 Ala. 180. Charge 4 should have been given.
—*Wynn v. Tallapoosa Bank, supra.* The affirmative
charge was improperly given.—2 Mayf. 562.

GEORGE A. SORRELL, for appellee. Fraud vitiates all contracts.—*Baker v. Maxwell,* 99 Ala. 558. The title to property can rise no higher than its source.—*Lightner v. Boyd,* 132 Ala. 618. The defendant cannot successfully defend against the claim of the true owner unless he received the money in good faith and for a valuable consideration.—*Kinnell v. Beane,* 104 Am. St. Rep. 420. While the law is that a bank has a lien upon a general deposit to secure the repayment of the depositor's indebtedness to it, this right of application has no field of operation unless the money deposited belonged to and was the property of the depositor.—3 A. & E. Ency. of Law, 835; 58 Fed. 632. Under all the circumstances in this case it was the duty of the appellant to deliver this money to the appellee and upon refusing to do so appellee had a right of action as here sought.—52 N. Y. Rep. 1; 84 N. Y. Rep. 121; 47 N. Y. 688; 128 Pa. St. 474. The fact that the defendant was a surety on Ellis' bond was not only not admissible but could not have affected the result.—*Knighton v. Curry,* 62 Ala. 404; *Watts v. Eufala Nat. Bank,* 76 Ala. 470; *Smith v. Pitts,* 167 Ala. 415. On the general subject and matters involved in this case the following authorities will prove helpful. —*King v. Martin,* 67 Ala. 177; *Planters Bank v. Tunstall,* 72 Ala. 142; *Rushton v. Davis,* 127 Ala. 288; *Pierce v. Clements,* 73 Ala. 256; *Jackson v. Banes,* 74 Ala. 328; *Fry v. Mobile Bank,* 75 Ala. 473; *Yarbrough v. Wise,* 5 Ala. 292; 2 Ency. Pl. & Pr. 1016.

SOMERVILLE, J.—The meritorious and decisive questions presented by the rulings of the trial court on the pleadings may be concisely stated as follows : Where money is obtained by fraudulent representations which authorize a rescission of the contract under which it is paid, and it is rescinded, can the rescindor recover

the amount of the money in general assumpsit from one who has received it in good faith, without knowledge of the fraud, but who has given no value for it? And, if so, can such amount be recovered from a bank which in good faith received it as a general deposit in the usual course of business, and credited the depositor's account therewith, having at the same time a substantial claim against such depositor by his promissory notes, and nothing of value in its custody belonging to the depositor except his said deposit, but having made no appropriation of the deposit to its debt before notice of the plaintiff's rights?

With respect to the status of money obtained by fraud, and paid to another in due course of business without knowledge of its fraudulent source, we approve the following language: "The rule has been settled by a long line of cases that money obtained by fraud or felony cannot be followed by the true owner into the hands of one who has received it bona fide and for a valuable consideration in due course of business. * * * It is said that the case is to be governed by the doctrine established in this state that an antecedent debt is not such a consideration as will cut off the equities of third parties in respect of negotiable securities obtained by fraud. But no case has been referred to where this doctrine has been applied to money received in good faith in payment of a debt. It is absolutely necessary for practical business transactions that the payee of money in due course of business shall not be put upon inquiry at his peril as to the title of the payor. Money has no earmark. The purchaser of a chattel or a chose in action may, by inquiry, in most cases, ascertain the right of the person from whom he takes the title. But it is generally impracticable to trace the source from which the possessor of money has

derived it. It would introduce great confusion into commercial dealings if the creditor who receives money in payment of a debt is subject to the risk of accounting therefor to a third person who may be able to show that the debtor obtained it from him by felony or fraud. The law wisely from considerations of public policy and convenience, and to give security and certainty to business transactions, adjudges that the possession of money vests the title in the holder as to third person dealing with him and receiving it in due course of business and in good faith upon a valid consideration. If the consideration is good as between the parties, it is good as to all the world."—*Stephens v. Board of Education,* 79 N. Y. 183, 186, 187 (35 Am. Rep. 511). Even in those states where payment of an antecedent debt is not ordinarily regarded as a valuable consideration, it seems that the receipt of such money in good faith for such a payment precludes its recovery by one from whom it was wrongfully taken or diverted.—2 Pom. Eq. Jur. (2d Ed.) § 1048.

The rule is well settled "that a bank or broker has a lien on all moneys and funds of a customer, coming into his or its possession in the course of their dealings, for any balance of general account due from the customer." In *re Tallassee Mfg. Co.,* 64 Ala. 567, 595. And "the moment any advance or loan by the bank is made to the depositor, in the form of an overdraft, a discount, acceptance, etc., then the lien or right is born, and may be applied by the bank (and the bank only) to the payment of such indebtedness till it is fully discharged."—*Wynn v. Tallapoosa County Bank,* 168 Ala. 469, 489, 53 South. 228, 236.

What then were the rights of these parties? It is clear that, as against Ellis, the defendant bank became the owner of the money thus deposited, and at the same

time became his debtor on account to that amount, and that it had a lien on such deposit for the general balance due to it from Ellis with the right to appropriate thereto so much of the deposit credit as was sufficient to discharge the depositor's indebtedness to it.

It is equally clear, we think, that by the rescission of its mortgage contract with Ellis, on account of the antecedent fraud, the plaintiff bank became entitled to the specific money it paid to Ellis so long as he retained it; and that, when its identity was lost by its payment to another who received it in good faith in the general course of his business, without notice of the fraud, plaintiff's claim to the specific money was necessarily destroyed. And, if it were paid to such third person for any valid legal consideration, he would be under no obligation, legal or equitable, to repay it to plaintiff.—*Kimmell v. Bean,* 68 Kan. 598, 75 Pac. 1118, 64 L. R. A. 785, 104 Am. St. Rep. 415, citing the authorities.

Crediting Ellis' deposit account with the amount deposited by him was in no sense the payment of a consideration to him for the money thus received. Had the defendant bank actually appropriated Ellis' deposit account to the payment and extinction of its valid claims against Ellis, before it received notice of plaintiff's right and claim thereto, it seems, according to the weight of authority, that the money, or rather the deposit account, would have been freed of the equity with which it was otherwise charged in favor of plaintiff.—*Smith v. Des Moines Nat. Bank,* 107 Iowa, 620, 78 N. W. 238; *Kimmel v. Bean,* 68 Kan. 598, 75 Pac. 1118, 64 L. R. A. 785, 104 Am. St. Rep. 415. There are, however, several cases to the contrary: *Cady v. South Omaha Nat. Bank,* 46 Neb. 756, 65 N. W. 906; Id., 49 Neb. 125, 68 N. W. 358; *Davis v. Panhandle Nat. Bank*

[Batson v. Alexander City Bank.]

(Tex. Civ. App.) 29 S. W. 926. In this case the pleadings do not show that defendant ever made any such appropriation of the deposit account at all, and the undisputed fact is that it did not do so.

In equity and good conscience this money deposited by Ellis, or, more properly, the depositee bank's obligation to repay the amount of it to Ellis, belonged, not to Ellis, but to the plaintiff bank. General or implied assumpsit is an equitable action, and lies to recover any money which ex æquo et bono belongs to the plaintiff. There are no technical difficulties in the way here, and we have no hesitation in declaring that the quoted counts of the complaint stated a good cause of action, and that on the facts shown plaintiff would have been entitled to recover also on the common count in general assumpsit. And, for the same reasons, defendant's special pleas did not state a good defense. It results that the trial court did not err in its rulings on the demurrers. We consider now the action of the trial court in excluding certain questions propounded by defendant to plaintiff's witnesses on cross-examination.

Among the essential elements of fraud, as a ground of action for damages or for rescission, is the fact of plaintiff's right to rely on the false representations, and the fact that he did rely on them. In relation to these issues, defendant sought to elicit from two of plaintiff's witnesses the following circumstances: (1) That plaintiff had a mortgage on the same property the year before; (2) that plaintiff, at the time of its first business dealings with Ellis dating a long time back, knew that he was financially embarrassed; (3) that plaintiff's business dealings with Ellis as a county official "had been the subject of criticisms;" (4) that plaintiff's cashier, who made the loan to Ellis, knew at that time that Ellis was not extensively engaged in farming.

Defendant also asked the witness Ellis, who had testified to borrowing money from plaintiff for six or eight years, (5) "if he had been giving commercial paper or mortgages all along," without stating what he expected the answer to be.  These circumstances could have no tendency whatever to put plaintiff on notice of the nonexistence of the six mules presently claimed by Ellis to be owned by him.  Indeed, if they have any relevant tendency at all, it would be rather opposed to appellant's contention.

It is to be noted, also, that circumstance 3 is flagrantly objectionable as being both hearsay and opinion; and that, the question as to circumstance 5 not indicating a relevant answer, no error is apparent from its rejection. —*Roberts v. State,* 68 Ala. 515, 524.  The trial court did not err in excluding these several questions.

At the request of the plaintiff in writing, the trial court instructed the jury, that, if they believed all the evidence in the case, they should find for the plaintiff, and this, it is urged, was not authorized by the evidence. The basis of plaintiff's right to the money in question is not merely the rescission of the contract, as agreed to by Ellis after his deposit of the money, but primarily it here depends upon his right of rescission antedating defendant's receipt of the money from Ellis.  The fact of prompt rescission is clearly shown without dispute in the evidence.  As supporting the right of rescission, it appears without dispute (1) that Ellis made a false representation of a material fact to plaintiff; (2) that this representation was one upon which plaintiff had a right to rely; (3) that it was in its nature calculated to induce reliance upon it, and to induce the giving of the credit sought; (4) that it was made for the purpose of securing credit; (5) that credit was contemporaneously given to Ellis.

[Batson v. Alexander City Bank.]

It is argued that the remaining essential, viz., the actual reliance of plaintiff upon the representation as an inducement to advance the money to Ellis, rests in inference, and is therefore a question for the jury upon all the evidence.

The only direct evidence of the effect of the representation is to be found in the statement of Maxwell, cashier of the plaintiff bank, who represented the bank in the transaction with Ellis, that the loan was made on the faith of the mortgage given as security therefor. But, excluding from consideration the evidential value of this statement, the rule is well settled, both on reason and authority, that when a party has acted on a representation such as the one here shown, and he seeks rescission on the ground of the fraud, in the absence of rebutting circumstances, there arises a presumption in his favor that he relied upon and acted upon the representation, and the burden is upon the other party to overcome such presumption by evidence to the contrary.—2 Pom. Eq. Jur. (2d Ed.) §§ 891, 892. And one claiming under the fraud-feasor stands in this respect in his shoes, and must, of course, assume the same burden. We find in this record no evidence which has any tendency to rebut the presumption of law that plaintiff's extension of credit to Ellis was the natural and proximate result of plaintiff's reliance upon Ellis' claim and upon his ownership of the six mules. Hence there was no question to be submitted to the jury, and the general affirmative charge for plaintiff was properly given as to the stated counts in assumpsit.

But the charge, as given, was upon the complaint generally, and was as applicable to the count in trover as to those in assumpsit. It should have been restricted to the latter, and was certainly misleading without such restriction. Defendant's recourse, however, was to re-

quest a qualifying charge. Indeed, it seems clear, as already declared, that on the trover count defendant would have been entitled to the general affirmative charge had it been requested in appropriate form. It was not requested, however, and defendant was content, instead, to request the giving of charges 3 and "B" which define the proof to be made by plaintiff as a prerequisite to recovery under the trover count.

Both of these charges are faulty, in that they incorrectly state the measure of proof to be required of plaintiff; for it is not necessary to absolutely "prove to the jury" or "satisfy the jury," but only to prove to their reasonable satisfaction, or reasonably satisfy them. Hence, as frequently held by this court, the trial court was not in error in refusing to give these charges as thus framed.—*L. & N. R. R. Co. v. Sullivan Co.,* 126 Ala. 103, 27 South. 760.

Plaintiff having the right to rescind the mortgage contract with Ellis, its surrender to him of the mortgage instrument, or its cancellation thereof, as a condition to rescission, was a question between it and Ellis only, and either of which Ellis might waive as he did, even if it were conceded that he might require either of these acts to be done by plaintiff. The rescission was sufficiently shown by the evidence, and was effectual and complete.

Finding no error in the record prejudicial to defendant, the judgment will be affirmed.

Affirmed. All the Justices concur.