# Reinisch *v.* Consolidated National Bank, Appellant.

*Banks and banking—Checks—Dishonoring checks—Checks in excess of deposit—Payment.*

Where a number of checks variously dated are presented to a bank simultaneously through the clearing house for payment, and the aggregate amount of the checks is greater than the amount of the deposit, the bank is bound to pay the checks, but in any order that it may choose, until the deposit is exhausted, if there is no rule of the clearing house or custom of the banking community to the contrary.

Argued Oct. 12, 1910. Appeal, No. 58, Oct. T., 1910, by defendant, from judgment of C. P. No. 2, Phila. Co., Sept. T., 1907, No. 3,348, on verdict for plaintiff in case of Meier Reinisch and M. Stangart, trading as Meier Reinisch & Company v. Consolidated National Bank. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Trespass against a bank for dishonoring checks. Before SULZBERGER, P. J.

Verdict and judgment for plaintiff for $100. Defendant appealed.

*Errors assigned* were (1, 2) answers to points quoted in

the opinion of the Superior Court and refusal of motion for judgment n. o. v.

*George R. Van Dusen,* for appellant.—A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer of the bank and the bank is not liable to the holder unless and until it accepts or certifies the check: Tibby Brothers Glass Company v. F. & M. Bank, 220 Pa. 1; Act of May 16, 1901, sec. 189, P. L. 194, 219.

The mere priority in the drawing of a check upon a bank, is not sufficient to give to the holder of such check a legal right to preference in payment: Dykers v. Leather Mfrs. Bank, 11 Paige (N. Y.), 612.

If the bank cannot pay all the checks of any individual depositor then coming through clearing, it must pay none of them: 1 Morse on Banks and Banking, sec. 354; Watson Clearing House Law, sec. 16; 2 Parsons on Notes and Bills, 78; 5 Cyc. Law & Proc. 535.

*Morton Z. Paul,* for appellee.—The bank had no right to refuse to pay checks on this account which could have been paid by the balance on deposit: Bromley v. Commercial Nat. Bank, 9 Phila. 522; Dana v. Boston Third Nat. Bank, 95 Mass. 445; Hemphill v. Yerkes, 132 Pa. 545; Birchall v. Third Nat. Bank, 15 W. N. C. 174; Rolin v. Steward, 14 C. B. 595; Marzetti v. Williams, 1 B. & Ad. 415.

OPINION BY HEAD, J., March 3, 1911:

For some months prior to September 4, 1907, the plaintiffs, small merchants in the city of Philadelphia, had maintained an ordinary deposit account in the defendant bank. At the opening of business on the morning of that day it is conceded the correct amount of the balance to their credit was, as shown by the books of the bank, $328.12. The defendant bank was a member of the Clearing House, and while the situation remained as above stated, its mes-

senger returned from the Clearing House, bringing with him a bundle of seventeen checks drawn by plaintiffs, which he handed to the proper bank officer. This, under established usage, amounted in law and fact to a presentation of these checks for payment.

The largest sum called for by any single check of the seventeen was $75.00 the smallest $5.00, but their aggregate sum was $664.45, a little more than twice the amount of their balance. The bank thereupon declined to pay any of the checks and returned them to the Clearing House. Shortly afterwards a messenger of the plaintiffs arrived at the bank with a deposit of $480.50. The bank, having already rejected and returned the checks as stated,‘ declined to receive this deposit and requested the plaintiffs to close their account. Accordingly on the following day, September 5, the plaintiffs drew their check to the order of cash for $328.12, the amount of their balance. The check was paid and the account closed.

The plaintiffs then brought this action of trespass to recover damages. The pleadings are not printed in the paper-books, but we understand from the history of the case presented by appellant that it was not claimed that the bank was under any obligation to pay all of the checks presented. The complaint is that, having admittedly $328.12 of the plaintiffs' money on deposit, the bank refused to pay any of their checks up to the amount of that balance.

The theory of the defendant is fairly and fully set forth in its first point for charge, the refusal of which constitutes the first assignment of error. The point was "As the evidence shows that the aggregate amount of the checks drawn by the plaintiffs, presented to the defendant on September 4, 1907, was greater than the amount plaintiffs had then on deposit with defendant, there was no obligation on the part of defendant to pay any part of them, and it had no right to pay certain checks and refuse payment of others; the verdict must therefore be for defendant." This was followed by a point for binding instructions which

was refused, as well as a motion for judgment n. o. v., and the refusal of this motion is the remaining and only other assignment of error.

In determining the propriety of the action of the bank in rejecting all of the checks of the plaintiffs we exclude from our consideration the later offer of deposit. Whatever it may prove as to the good faith of the plaintiffs when they issued checks aggregating more than their balance in bank, it can in no way aid in determining the legal obligation of the bank at a time when it could not know that its depositor was about to increase his balance by the addition of a fresh deposit.

It may not be unworthy of remark that notwithstanding the vast volume of commercial business transacted every day in Pennsylvania by the use of bank checks, the question now before us seems to have never reached our courts for determination, and we are without the aid of any precedent. The defendant's theory, however, is supported by as respectable an author as Mr. Morse, who, in his work on banks and banking in sec. 354, speaking of a bank in the situation which confronted this defendant, says: "The bank cannot look at their dates; for priority of presentment not of date secures priority of payment, so if the bank cannot pay all the checks of any individual depositor then coming through clearing, it must pay none of them. It has no legal power or right to select or choose from among them certain ones which it will honor or certain ones which it will dishonor. All or none must be paid. Any other course would render the bank liable to the holders of the dishonored paper." Apparently the compelling reason upon which the author's conclusion rests is indicated in the last sentence quoted.

In Pennsylvania, however, it has long been established that the holder of a check, who presents it to the drawee bank for payment, acquires no right of action against the bank by reason of its refusal to pay such check, even where the maker has on deposit ample funds for that purpose. And this for the simple but sufficient reason that

the bank has no contractual relations whatever with such holder. Having never undertaken with him to pay any check he might present, there could be, as we view it, no breach of duty to him in its refusal to pay. In such a case the rights and remedies of the holder of the check rest on his contract with the maker and must be worked out through that contract. And conversely, the duty and obligation of the bank rests upon its contract with its depositor, and he is the only party who can suffer a legal injury by the bank's breach of such contract. We must conclude therefore that it is not a sound proposition in Pennsylvania to assert, in the language of the learned author we have quoted, that "any other course would render the bank liable to the holders of the dishonored paper." In other words we cannot accept the doctrine proposed by Mr. Morse because the reason on which it rests is not in harmony with the established law of Pennsylvania which determines the relations of the holder of a check to the bank on which it is drawn. Our question is therefore not embarrassed by the necessity of considering the attitude of the holders of the checks that would have been rejected had the defendant bank seen fit to select from those presented such as it could pay by the use of the balance to the credit of the plaintiffs then on deposit.

There remains but one other aspect in which the question may be viewed, and this must be the controlling one. This is an action brought by the depositor. He bases his right to recover on the breach of a contract between him and the defendant bank. The existence of such a contract is not and cannot be denied by the defendant. Nor can it be doubted that the obligation of that contract, as has been frequently declared by our courts, requires the bank to pay over the moneys of its depositor upon his demand made in the form sanctioned by commercial usage. As already stated, it could not be successfully claimed for the plaintiffs that the defendant bank was obliged to pay all of the checks presented on the morning of September 4. No line or letter of its contract required it to pay more than

the amount of the balance provided by the plaintiffs for that purpose. If the Clearing House, as the representative of the various banks who were the lawful holders of the checks, had so consolidated its demand that it refused to accept payment of some of the checks unless all were paid, we would have a different question. Or if the evidence showed any rule of the Clearing House which compelled the defendant bank to pay all or reject all of a number of checks thus presented together, we are not prepared to say that the defendant could not have safely acted on such rule.

For although it may be true enough, in a general sense, that the rules of the Clearing House are binding only on those who are members of it, yet it would be difficult for the plaintiffs to maintain that after they had launched their checks into the general channels of commerce they would not be affected by the reasonable usages and customs of those agencies which they must have expected would be used as their checks passed on their way to their final destination. But we have not this question before us because the evidence is barren as to the existence of any rule or regulation on this subject by the Clearing House. Nor does it even show the existence of any custom among the banks of the city of Philadelphia in such cases.

There was therefore nothing we can see in the law of Pennsylvania, or in any established and recognized usage or custom which might affect the plaintiffs or control the action of the defendant, which forbade the latter to comply with the obligation of its contract with its depositor. Had the defendant chosen to take up the checks in the order of their date and pay them as far as the plaintiffs' money would go, who could complain of such action? As we have already seen, the holders of the checks not paid would have no standing at all to demand anything from the bank, nor could they be legally injured by its action. And the depositor would in vain attempt to say that he had been injured because each check which the defendant would have paid would have been a lawful demand by the

depositor for so much of his money, and the payment of such checks would satisfy the most rigid interpretation of the bank's obligation.

But we are not willing to say that this was the only course that could or should have been followed by the defendant bank. There is considerable force supporting the practice that seems to prevail among banks in certain sections of the country when called upon to dispose of a question like that which confronted the defendant bank on September 4. This practice is, in such cases, to select and pay the largest number of the checks presented that can be paid out of the balance on hand, and this on the reasonable theory that the credit of the depositor will be less hurt in the general commercial world by the rejection of a few checks, even if their amounts be larger, than by the dishonor of many. And again, it is difficult to see how the depositor could be heard to complain had his money thus been applied by the bank.

It is no part of the plaintiffs' case, however, to establish the proposition that it was the duty of the bank to pay their checks in the order of their date as long as the balance on hand was adequate. The defense fails if the bank was obliged to pay any of the checks, allowing to it, for the purposes of this case, to select for itself which checks it would pay. As the record stands we can reverse this judgment only on the ground that because there were seventeen separate and distinct checks aggregating more than the plaintiffs' balance, the defendant was relieved from the obligation of its contract with its depositor and was justified in paying none of them. We are unable to perceive any solid foundation on which this conclusion would rest. Any check of that bundle which the paying teller chose first to take up, no matter what its date, was a legal demand by the plaintiffs for the payment of that much of their money. The deposit was there to meet it. The fact that sixteen other checks were on his counter awaiting his action, created no legal obstacle to the payment of that one; no paralysis of the obligation of the bank's contract

with its depositor; no menace of disaster to follow what would have been at once the exercise of a right and the discharge of a duty. It appears to us that no force of any kind was present operating in any way to relieve the bank from its duty to pay or offer to pay some of the checks presented up to the amount of the plaintiffs' deposit. It is true the bank officers were suddenly brought, without any fault of their own, to determine at their peril how to meet an infrequent and unexpected difficulty where their proper attitude had not been specially defined by statute, by the courts of the state, or established usage in their own commercial world. But the obligation of their contract with their depositor was simple, was ever present, and for aught we can see was then operative, and it was sufficient to be "a guide to their feet and a lamp to their path." After allowing to the bank every reasonable discretion in the way of selecting which checks it would pay, this obligation demanded of it that it should select and pay some of them until the plaintiffs' deposit was exhausted. It could not and did not, as we view it, meet the obligation of that contract by rejecting all of the checks.

No question is raised as to the measure of damages. The verdict is a moderate one, and we are of the opinion that the judgment entered on it cannot be fairly disturbed.

Judgment affirmed.