No. 23,679.

Floyd Chadd, *Appellee*, v. The Byers State Bank, *Appellant*, et al.

SYLLABUS BY THE COURT.

Banks and Banking—*Numerous Checks Drawn by Depositor Received by Bank in Same Mail—Insufficient Deposit to Meet All Checks—Order in Which Checks Should be Paid.* A stock buyer purchased cattle for which he gave his check, having no deposit sufficient to meet it. He shipped the cattle to a commission company in Kansas City in the name of his minor son without his knowledge. The cattle were sold and the proceeds deposited in a Kansas City bank, which notified the bank on which the check was drawn of the deposit to its credit having been made by direction of the minor. The check referred to and a number of others drawn by the same person were sent for collection to the drawee bank, reaching it by the mail which brought the notice. The drawer of the check told the bank cashier that the money belonged to him and requested that it be credited to his account, which was done. The bank used the money as far as it would go in payment of the checks, but did not pay that first referred to, the holder of which sued the bank on the theory of his having a prior claim against the fund. It is held—

1. The direction given by the actual shipper of the cattle that the fund should be placed to his credit was effective, inasmuch as his son had no real ownership of or interest in the cattle or their proceeds.

2. Knowledge by the bank that the plaintiff's check was given for cattle and that the credit at Kansas City was the proceeds of cattle shipped by the drawer of the check in the name of his son was not sufficient to charge it with notice that the credit resulted from the sale of the plaintiff's cattle.

3. Where a bank received by the same mail a number of checks drawn against it by the same person, whose deposit is not large enough to meet all of them, if it applies the amount on hand so far as it will go to the payment of the checks in any order it sees fit, it will not thereby render itself liable to the holder of a check remaining unpaid; assuming that there was no exceptional reason for preference.

Appeal from Pratt district court; George L. Hay, judge. Opinion filed May 6, 1922. Reversed.

*R. F. Crick, L. G. Turner, William Barrett,* and *George Barrett,* all of Pratt, for the appellant.

*Paul R. Nagle,* and *Harry T. Gray,* both of St. John, for the appellee.

The opinion of the court was delivered by

Mason, J.: Floyd Chadd, a resident of Stafford county, sued the Byers State Bank, of Byers, Pratt county, charging that a deposit known by it to be the proceeds of the sale of cattle bought from him

for which the purchaser had given a check on the bank, had unjustifiably been used in the payment of other checks, with the result that he received nothing upon his. He recovered a judgment, and the bank appeals.

J. W. Wasson, a stock buyer, of Byers, on September 28, 1918, bought twenty-four head of cattle from Chadd for $1,140, giving his check for that amount on the defendant bank. At about the same time he bought sixteen head from two other persons, giving them his checks on the same bank for $710 and $60 respectively. He shipped the forty head from St. John, Stafford county, in the name of his minor son, A. D. Wasson, to a Kansas City commission company which sold them for a net return of $1,530.25, depositing that amount in a Kansas City bank to the credit of the Byers bank. The Kansas City bank gave the Byers bank notice of the credit, stating that it was by direction of A. D. Wasson. From the fund thus acquired the bank paid the checks for $710 and $60 already referred to, and also four other checks for the aggregate amount of $770 drawn by J. W. Wasson. Payment of the Chadd check was refused for want of funds, Wasson having on deposit (disregarding the credit referred to) only a nominal sum. Chadd claims that the bank had such knowledge of the source of the $1,530.25 credit that it was not authorized to pay it out upon any checks other than those given for the cattle the sale of which had produced the fund. His recovery was for $760.35, that being the amount of the credit resulting from the sale of the cattle less the amount of the two other checks which had been given for them and which were paid in full out of their proceeds.

1. A. D. Wasson, in whose name the cattle were shipped, and in whose name the credit at Kansas City was given, knew nothing whatever about any feature of the transaction. His name was used without his knowledge, but without objection on his part, after the facts became known to him, to anything done by his father. Upon the bank's receipt of the notice showing it to have been credited at Kansas City with $1,530.25 by direction of A. D. Wasson, J. W. Wasson requested the cashier to pass the amount to his credit, and this was done, checks other than that of the plaintiff being paid from this fund as already stated. The decision of the trial court appears to have been based upon the theory that the request of J. W. Wasson as to the disposition of the fund was without effect because not authorized by his son. We are unable to accept this

Chadd v. Bank.

view. The object of J. W. Wasson in shipping the cattle in the name of his son is not shown. He died on October 6, 1918, and therefore no explanation on his part was available at the trial. But whatever the purpose may have been, inasmuch as he said nothing to his son about it, and his son knew nothing of the transaction, we must regard the proceeds of the cattle as owned by and under the control of the former. The son acquired no title or right of possession from the fact of the cattle having been, without his knowledge, shipped by his father in his name. It follows that the request of J. W. Wasson that the defendant bank should credit the proceeds to his account was as effective as though concurred in by A. D. Wasson or made by his authority.

2. The plaintiff, not having sold his cattle on credit and not having received payment for them, was entitled to reclaim them or their proceeds as against any one not occupying the position of an innocent purchaser. (*Bank v. Brown*, 80 Kan. 520, 103 Pac. 102; 35 Cyc. 506, 510. See, also, *Union Stock Yards Bank v. Gillespie*, 137 U. S. 411.) If the defendant, however, paid out the proceeds without actual or constructive notice of the plaintiff's relation to them it was not liable to him. (*Martin v. Bank*, 66 Kan. 655, 72 Pac. 218.) The court found that at the time the bank paid out the money corresponding to the credit at Kansas City it had notice and knowledge that such credit was from the proceeds of the sale of the Chadd cattle and those which had been shipped with them. We feel constrained to hold, however, that there was no evidence to support that finding unless constructive notice may be deemed to arise from the use of the name of A. D. Wasson in the transaction. The cashier before paying out any of the money knew from statements made to him by J. W. Wasson that the fund was derived from a shipment of cattle made by him in the name of his son. And the fact that Chadd's check bore on its face the memorandum "24 cattle" may be regarded as advising the cashier that the check given to the plaintiff was for cattle. But nearly or quite all of the checks paid out of the fund in question bore similar memoranda, indicating that they also were given for cattle, and we discover nothing to charge the bank with notice that the twenty-four cattle for which the plaintiff's check was given were any part of the shipment from which the fund was derived, unless, as already suggested, it should be the circumstance of the cattle having been shipped in the name of A. D. Wasson. That circumstance did indeed to some extent and for some pur-

poses put the bank upon inquiry. It was bound to determine at its peril the right of J. W. Wasson as between him and his son to control the fund which stood in the name of the latter. But it determined that matter rightly according to the established facts as we have applied the law to them. The use of the name of A. D. Wasson in the shipment was a mere matter of form. A. D. Wasson had no interest in the cattle, personally or as representing others. They were not shipped in his name by virtue of any arrangement with him or with any one else. It might be suggested that J. W. Wasson's uncommunicated purpose was to segregate this particular transaction from his other business for the protection of those who had sold him the cattle and who had not been paid—so that the proceeds might be identified as a fund against which they had a specific claim. But in that case he would naturally have made some provision for carrying out the design, whereas in fact he pursued a course inconsistent therewith by directing the fund to be placed to his credit in the bank. We do not think that the appearance of the name of A. D. Wasson in the transaction required the bank to make any inquiries except as a protection against claims of A. D. Wasson, or that for any reason it owed the plaintiff a duty to inquire of what cattle the fund was the proceeds.

· 3. Chadd deposited his check at his home and it reached the defendant bank by way of Kansas City on the morning of October 5, in the same mail that brought the notice of the Kansas City credit. The cashier testified that so long as the money held out he paid the checks in the order of their presentation; he said, however, that as he remembered he received all the checks (including the plaintiff's) at the bank at the same time; that he paid them out just as he got to them, and didn't know just which one came first. There is a difference of opinion as to the duty of a bank with respect to checks presented through the clearing house at the same time, where the deposit is not sufficient to meet them all. It is said on the one hand that none should be paid, and that any other course would render the bank liable to the holders of the dishonored paper (1 Morse on Banks and Banking, 5th ed., § 354), and on the other that the bank must pay the checks to the extent the deposit admits, but in any order it sees fit. (*Reinisch v. Consolidat'd Nat. Bk.*, 45 Pa. Super. Ct. 236.) Whatever may be the rule in any other situation, we think that where a number of checks reach the bank upon which they are drawn by the same mail the bank is not liable to any of the holders

Bank v. Birch.

by reason of the order in which the funds of the drawee are applied in their payment, assuming of course that there are no exceptional reasons for a preference. There was testimony that one or two of the checks paid had previously been presented and protested and by direction of the owners were held by the bank to await sufficient funds for their payment. These obviously were entitled to at least as favorable treatment as those received later.

The judgment is reversed and the cause remanded with directions to reduce the judgment to $72.27 (the amount of the proceeds of the plaintiff's cattle received by the bank in excess of the checks that it paid) with interest and costs in the district court.

JOHNSTON, C. J., PORTER and WEST, JJ., dissent on the ground that the facts recited in the opinion are sufficient to justify a finding that the cashier had notice of the origin of the fund.